(371 P.3d 954)

No. 112,787

STATE OF KANSAS, *Appellee*, v. BRENT J. KRAEMER, Appellant.

Opinion filed April 29, 2016.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Brock R. Abbey* and *Anna M. Jumpponen*, assistant county attorneys, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J, LEBEN and POWELL, JJ.

STANDRIDGE, J.: Brent J. Kraemer was arrested for driving under the influence (DUI) of alcohol after a routine traffic stop for failing to use his turn signal. On appeal, Kraemer makes two arguments. First, he argues the officer did not have probable cause to arrest him. Second, he contends the district court erred in finding the good-faith exception to the exclusionary rule applied after the court determined that his consent to the breath-alcohol test was coerced. For the reasons stated below, we affirm.

## FACTS

On September 5, 2013, around 2:20 a.m., Officer Randy Constantino of the Salina Police Department pulled Kraemer over for failing to use a turn signal while turning. Constantino testified Kraemer appeared very nervous and shaky and stuttered when he spoke. Constantino also noted Kraemer had watery, bloodshot eyes. Constantino smelled alcohol and asked whether Kraemer had anything to drink. Kraemer admitted to having one beer.

Constantino then asked Kraemer to exit the vehicle for field sobriety testing. Although Kraemer did not appear to have difficulty exiting the car, Constantino noted that Kraemer leaned on the rear of the car for support afterward, which Constantino recognized as an indication that Kraemer might be impaired. Constantino also testified to smelling alcohol on Kraemer's breath when standing close to Kraemer.

Constantino first instructed Kraemer on the walk-and-turn test. For the walk-and-turn test, Constantino told Kraemer to take nine heel-to-toe steps down a line, then turn around using a series of small steps, and walk nine heel-to-toe steps back. Constantino demonstrated the test for Kraemer. Constantino instructed Kraemer to look down at his feet, count out loud the number of steps, keep his arms at his side, and not stop walking until the task was completed.

Constantino looked for eight indications or clues that a person was impaired on the walk-and-turn test. The first clue was whether the person failed to hold the heel-to-toe position while being instructed. The second clue was whether the person started too soon. Clues during the walk included the person failing to step heel-to-toe, stepping off the line at any time, walking with raised arms, stopping, or making an improper turn.

According to Constantino, the first error Kraemer made on the walk-and-turn test was stepping out of the heel-to-toe position during the instruction stage. Constantino acknowledged that while instructing Kraemer on the test, a cat wandered into the area around Kraemer's feet. Constantino did not grade the test differently based on the cat's presence and removed the cat from the area before Kraemer took the first heel-to-toe step. The cat returned after Kraemer had taken a few steps, and the officer again removed it.

Kraemer's second error occurred when stepping off the line on step six of the first nine steps. On video footage from Constantino's police car, Kraemer claims that the cat caused the error, but the video reflects that the cat already had been removed. On step eight of the first nine steps, Kraemer failed to properly step heel-to-toe and again stepped off the line; the officer counted it as missing the heel-to-toe. Constantino also noted that Kraemer made an error in making the turn; Kraemer was instructed to take a series of small steps to turn around but instead took only two steps. Kraemer made no mistakes when walking back.

Constantino then instructed Kraemer on the one-leg stand test, which requires a person to raise and hold his or her foot extended 6 inches off the ground and count "[o]ne thousand one, one thousand two, one thousand three and so on," until the officer tells the person to stop. As part of the instructions, Constantino told Kraemer to look down at his extended foot, count out loud, keep his arms to his sides, and keep his legs straight. During this test, Constantino watched for one of four indicators of impairment: putting the foot down, swaying while balancing, putting arms out for balance, or hopping on one foot. Kraemer held the position for 20 seconds before putting his foot down, but the test required him to hold the position for 30 seconds. Although the cat entered the periphery of the video frame while Kraemer was holding his leg up, the cat did not come close to Kraemer. Constantino did not believe the cat interfered with the test. Constantino acknowledged that there were people in the yard nearby but noted that, in administering the field sobriety tests, police look to see whether the person was easily distracted or whether the person could ignore a diversion and pay attention to the task at hand.

Overall, Constantino noted four errors on the walk-and-turn test and one on the one-leg stand test. Based on Constantino's observations, Kraemer's admission to drinking alcohol, and Kraemer's performance on the field sobriety tests, Constantino arrested Kraemer for DUI. After transporting Kraemer to the "intox room" at the jail, Constantino provided Kraemer with a written copy of the required implied consent advisory, read the required advisory out loud to Kraemer, and then asked Kraemer to submit to a breath-alcohol

test. Kraemer indicated he would submit to the test as requested. Test results revealed Kraemer's blood-alcohol concentration to be .139, which was above the .08 legal limit for drivers. See K.S.A. 2015 Supp. 8-1567(a)(1). Thereafter, Kraemer was charged with alternative counts of DUI with two prior DUI convictions, driving with a cancelled or suspended license, and improper lane change.

Kraemer filed a motion to suppress the breath-alcohol test results, arguing the officer did not have probable cause to arrest him, which rendered his arrest illegal and any evidence obtained after the arrest inadmissible at trial under the exclusionary rule. The district court held a hearing on the matter on March 4, 2014. Kraemer's attorney argued that the officer did not have probable cause to arrest Kraemer because he had not been driving erratically and his errors on the field sobriety tests were the result of outside interferences during testing. The district court was not persuaded by Kraemer's argument and found Constantino had probable cause to arrest "based upon the officer's observations, [Kraemer's] admission of drinking alcohol, and [Kraemer's] performance on the field sobriety tests."

After his first motion to suppress was denied, Kraemer filed a second motion to suppress. In this second motion, Kraemer claimed the breath-alcohol test results were obtained in violation of his constitutional rights. Specifically, Kraemer argued his consent to take the breath-alcohol test had been coerced because he was improperly told prior to the request that he could be charged with another crime if he refused testing. After a hearing on March 27, 2014, the district court held the criminal refusal statute to be unconstitutional on its face. Finding Constantino improperly advised Kraemer he could be charged with a separate offense under the criminal refusal statute if he refused testing, the court then held that Kraemer's consent was coerced and involuntary under the Fourth Amendment to the United States Constitution. Notwithstanding a finding that Kraemer's consent was coerced, the district court ultimately denied Kraemer's motion to suppress based on its further finding that the officer acted in good faith in advising Kraemer that he would be charged with another crime if he refused to

take the test. Based on this finding, the court deemed the breath-alcohol test results admissible under the good-faith exception to the exclusionary rule.

The parties agreed to a bench trial on stipulated facts. After reviewing the submitted evidence and statement of stipulated facts, the district court found Kraemer guilty of DUI.

The district court sentenced Kraemer to 12 months in county jail and imposed the statutory mandatory minimum fine of $1,750. The court then suspended the sentence and placed Kraemer on 12 months' probation but ordered him to serve the minimum 90 consecutive days in jail before beginning probation.

## ANALYSIS

*Probable cause*

The district court determined that Officer Constantino had probable cause to arrest Kraemer based on the officer's observations, Kraemer's own admission to drinking, and Kraemer's performance on the field sobriety tests. On appeal, Kraemer contends that when looking at the totality of the circumstances, the officer did not have probable cause to arrest him. We disagree.

When reviewing a motion to suppress evidence, this court reviews the district court's factual findings to determine whether they are supported by substantial evidence. In reviewing the factual findings, this court does not reweigh the evidence, assess the credibility of witnesses, or resolve conflicting evidence. *City of Atwood v. Pianalto*, 301 Kan. 1008, 1012, 350 P.3d 1048 (2015); *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014). This court then reviews the ultimate legal conclusion—here, whether the officer had probable cause to arrest—independently, without any required deference to the district court. 299 Kan. at 296.

The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures; § 15 of the Kansas Constitution Bill of Rights provides identical protection. *State v. Moralez*, 297 Kan. 397, 404, 300 P.3d 1090 (2013). To enforce the constitutional provisions, this court must first determine whether a seizure occurred and then determine whether it was reasonable. *Reiss*, 299 Kan. at 297. A traffic stop is a seizure under the

Fourth Amendment; and the officer conducting the stop must have reasonable suspicion, meaning a specific, objective, articulable basis for believing that the person being detained is committing, has committed, or is about to commit a crime. See K.S.A. 22-2402(1); *Pianalto,* 301 Kan. at 1011; *State v. Moore,* 283 Kan. 344, Syl. ¶¶ 2, 7, 154 P.3d 1 (2007). A traffic violation is an objectively valid reason to stop and detain someone for a limited duration to check documents and identification, run a computer check, and issue a citation. *State v. Jones,* 300 Kan. 630, Syl. ¶ 5, 333 P.3d 886 (2014); *Moore,* 283 Kan. at 350. An officer may extend a traffic stop beyond the time needed to address the traffic violation only if he or she has reasonable suspicion that the person was or is involved in additional criminal activity. *Jones,* 300 Kan. 630, Syl. ¶ 6; *State v. Pollman,* 286 Kan. 881, Syl. ¶¶ 3-5, 190 P.3d 234 (2008).

But to lawfully arrest a person without a warrant, the officer must have probable cause. *Sloop v. Kansas Dept. of Revenue,* 296 Kan. 13, 20, 290 P.3d 555 (2012). Probable cause exists when the officer's knowledge of the events creates a reasonable belief that the defendant has committed a specific crime, but it does not require that the officer have evidence of every element of the crime. *Smith v. Kansas Dept. of Revenue,* 291 Kan. 510, 515, 242 P.3d 1179 (2010). In evaluating whether an officer has probable cause, the court considers the totality of the circumstances, given "'the information and fair inferences therefrom, known to the officer at the time of the arrest.'" *Sloop,* 296 Kan. at 20.

Officer Constantino witnessed Kraemer fail to use his turn signal, a traffic law violation, and therefore had valid grounds to pull him over. Upon approaching Kraemer, the officer smelled alcohol in the car. He testified that Kraemer appeared nervous and shaky and had bloodshot, watery eyes. This gave Constantino reasonable suspicion to extend the traffic stop to investigate whether Kraemer was driving under the influence of alcohol. Kraemer does not challenge Constantino's decision to extend the stop for further investigation; he argues only that the officer lacked probable cause to later arrest him for DUI.

In finding that the officer had probable cause, the district court discussed (1) the officer's observation of the odor of alcohol, (2)

Kraemer's admission to having consumed alcohol, (3) Kraemer's leaning on the back of the car for support, and (4) the cat's negligible effect on Kraemer's performance on the field sobriety tests. Kraemer challenges the district court's factual findings, arguing that the cat's presence invalidated the tests. The district court found that the presence of the cat did not affect the tests because "[t]he cat had been removed before the errors occurred in the walk-and-turn test and the cat was off in the periphery some distance away during the one-leg stand test." The district court's finding is supported by substantial evidence. Based on the video, which we have reviewed, and the officer's testimony, the cat was not near Kraemer when he moved around during the instruction stage, and the officer had removed the cat before Kraemer's missteps on step six and step eight and the improper turn. And although the cat reentered the video frame while Kraemer was performing the one-leg-stand test, it was only off in the distance.

Kraemer also asserts that the officer's instructions were not clear or complete during the walk-and-turn and one-leg-stand tests. In particular, Kraemer argues that the officer should have been more specific about how many small steps to take when turning around on the walk-and-turn test. The video shows the officer took approximately three small steps while demonstrating the move, but Kraemer took only two steps. Perhaps the officer's instruction and demonstration could have been better, but as long as the officer substantially complies with national guidelines in administering the field sobriety tests, the district court may still consider the officer's observations in determining whether the officer had probable cause to arrest. See *State v. Cox*, No. 110,447, 2014 WL 3732019, at *7-8 (Kan. App. 2014) (unpublished opinion) (finding court could consider field sobriety test results even though officer had failed to demonstrate one of the tests and incorrectly demonstrated the other). Kraemer also asserts that the officer should have told him how long he needed to hold the one-leg stand, claiming that "Constantino essentially had [him] do the one-leg stand until he failed." But Constantino testified that the one-leg-stand test requires individuals to hold the position for 30 seconds, which Kraemer was unable to do. See, *e.g.*, *Sloop*, 296 Kan. at 15.

Finally, Kraemer contends that Constantino did not have probable cause to arrest him because he was not driving erratically, noting that the only reason he was initially stopped was because he had failed to use his turn signal. Certainly, it would be unreasonable for an officer to arrest someone on suspicion of DUI based solely on his or her failure to use the turn signal. But, given the traffic violation, Constantino had valid grounds to pull Kraemer over and, through his interactions with and observations of Kraemer, he developed probable cause to arrest. There is no requirement that the police must observe a person driving erratically to have probable cause to arrest the person for DUI. See, *e.g.*, *State v. Duncan*, 44 Kan. App. 2d 1029, 1034, 242 P.3d 1271 (2010).

Here, based on the totality of the circumstances, Constantino had probable cause to arrest Kraemer for DUI. Prior to arrest, Constantino observed Kraemer had bloodshot, watery eyes; seemed nervous; and smelled of alcohol. Kraemer acknowledged drinking that night and leaned on his car for support. Kraemer made four errors on the walk-and-turn test and one error on the one-leg-stand test when the cat was not close by. For all of these reasons, we conclude the district court properly determined that the officer had probable cause to arrest Kraemer.

*Consent, coercion, and the good-faith exception to the exclusionary rule*

Under K.S.A. 2015 Supp. 8-1001(a), any person who drives a vehicle in Kansas is deemed to have consented to have his or her blood, breath, urine, or other bodily substances tested for the presence of alcohol or drugs—this is known as the Kansas Implied Consent law. An officer may request a person submit to testing if the officer has reasonable grounds to believe the person was driving a vehicle while under the influence of alcohol or drugs and has lawfully arrested the person for the offense. K.S.A. 2015 Supp. 8-1001(b); see *Sloop*, 296 Kan. at 17-19. Before the tests are administered, the police must provide the person with a written advisory explaining that Kansas law requires the person to submit to testing, that there is no constitutional right to refuse, and the potential consequences of refusing. K.S.A. 2015 Supp. 8-1001(k) (1)-(4); see K.S.A. 2015 Supp. 8-1025.

In this case, Constantino gave Kraemer a written copy of the required implied consent advisory in effect at the time, which stated—among other things—that if a person refuses to submit to testing and other prerequisites are met, he or she "may be charged with a separate crime . . . which carries criminal penalties equal to or greater than those for the crime of driving under the influence." K.S.A. 2015 Supp. 8-1001(k)(4). After giving him a written copy, Constantino then read the implied consent advisory to Kraemer out loud. After reading the advisory, Constantino then asked Kraemer to submit to a breath-alcohol test. Kraemer consented to submit to the test as requested. As noted above, the test results revealed Kraemer's blood-alcohol concentration to be .139, which is above the .08 legal limit for drivers. See K.S.A. 2015 Supp. 8-1567(a)(1).

Kraemer ultimately moved to suppress the results of the breath-alcohol test on grounds that his consent to submit to testing was coerced and no other recognized exception to a warrantless search applied. As discussed above, the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights prohibit unreasonable searches and seizures. *State v. Powell*, 299 Kan. 690, 694, 325 P.3d 1162 (2014); *Moralez*, 297 Kan. at 404. Subjecting a person to a breath-alcohol test constitutes a search under the Fourth Amendment. See *City of Dodge City v. Webb*, 50 Kan. App. 2d 393, 396, 329 P.3d 515 (2014) (citing *State v. Jones*, 279 Kan. 71, 76, 106 P.3d 1 [2005]), *rev. granted* 302 Kan. 1008 (2015). Thus, subjecting a person to a breath-alcohol test without a warrant is unreasonable unless the search falls within one of the recognized exceptions to the warrant requirement; those include consent, search incident to a lawful arrest, stop and frisk, and probable cause plus exigent circumstances. *State v. Overman*, 301 Kan. 704, 710, 348 P.3d 516 (2015).

Like he did below, Kraemer argues that no exceptions to the warrant requirement applied in his case. With regard to the State's argument that he consented to take the test, Kraemer asserts the consent was coerced and, thus, involuntary because he gave it only after being told that if he refused he could have been charged with another crime for refusing.

Citing the United States Supreme Court's recent decision in

*Missouri v. McNeely*, 569 U.S. __, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013), the district court agreed with Kraemer's position. In coming to its decision, the court first found as a matter of law that the criminal refusal statute, K.S.A. 2015 Supp. 8-1025, was unconstitutional because of "its chilling effect upon the person's exercise of [his or her] rights against or his [or her] protections against unreasonable searches under the Fourth Amendment." Notably, the legal conclusion reached by the district court with respect to the unconstitutional nature of the criminal refusal statute is the same conclusion recently reached by the Kansas Supreme Court in *Ryce*, 303 Kan. 899. In *Ryce*, the Kansas Supreme Court found:

"K.S.A. 2014 Supp. 8-1025 punishes an individual for withdrawing his or her consent to a search even though the right to withdraw consent is a corollary to the constitutional requirement that consent be free and voluntary. Thus, K.S.A. 2014 Supp. 8-1025 violates the fundamental right to be free from an unreasonable search. Because a fundamental right is involved, the strict scrutiny standard applies to a due process analysis." 303 Kan. 899, Syl. ¶ 9.

After applying the strict scrutiny standard of review, the court ultimately held K.S.A. 2014 Supp. 8-1025 is not narrowly tailored to serve the State's interests and thus is unconstitutional on its face. See 303 Kan. 899, Syl. ¶¶ 10-12. Although the mandate in *Ryce* has not yet issued, we must accept the Kansas Supreme Court's analysis and its ultimate holding that K.S.A. 2014 Supp. 8-1025 is unconstitutional on its face. Although the reasons for the decision in *Ryce* could be construed to differ from those of the district court decision in this case, an appellate court can affirm the district court if the court was right for the wrong reason. *State v. May*, 293 Kan. 858, 870, 269 P.3d 1260 (2012). We, therefore, affirm the district court's decision finding that K.S.A. 2015 Supp. 8-1025 is unconstitutional on its face.

Based on its finding that K.S.A. 2015 Supp. 8-1025 is unconstitutional, the district court then went on to find that Kraemer's consent to submit to breath-alcohol testing was not voluntary but instead was coerced. On that issue, the district court held that "the implied consent law was not intended to change an otherwise constitutionally defective search into a constitutionally permissible search by implying a consent to a search which otherwise would have to be

knowingly, intelligently, and voluntarily consented to." In facts almost identical to those presented here, the Kansas Supreme Court recently held a suspect's consent to testing was involuntary because it was obtained by means of an inaccurate and, therefore, coercive advisement. *Nece*, 303 Kan. 888, Syl. Relying on its holding in *Ryce* that the criminal refusal statute was unconstitutional, the court in *Nece* held that consent to testing was not freely and voluntarily given when the consent was given after a written and oral advisory informing the suspect that he or she might be charged with a crime pursuant to an unconstitutional statute. 303 Kan. 888, Syl. Although the mandate in *Nece* has not yet issued, we must accept the Kansas Supreme Court's analysis and its ultimate holding that a suspect's consent to testing is involuntary when it is obtained after an inaccurate written and oral advisory informing the suspect that he or she might be charged with a separate criminal offense bearing penalties equal to or greater than those for the crime of driving under the influence. See 303 Kan. 888, Syl. We, therefore, affirm the district court's decision finding that Kraemer's consent to submit to breath-alcohol testing was not voluntary but instead was coerced.

Notwithstanding a finding that the criminal refusal statute is unconstitutional and that Kraemer did not voluntarily consent to testing, the district court applied the good-faith exception to the exclusionary rule to ultimately deny Kraemer's motion to suppress the results of his breath-alcohol test. Notably, the Kansas Supreme Court did not address the issue of the good-faith exception to the exclusionary rule in *Nece* because the State did not file a supplemental brief presenting the argument and the attorney for the State conceded at oral argument that the State was not seeking application of the exception.

Generally, when police officers obtain evidence in violation of a person's Fourth Amendment rights, the evidence may not be used at trial—this is known as the exclusionary rule. *State v. Pettay*, 299 Kan. 763, 768-69, 326 P.3d 1039 (2014). The exclusionary rule was designed by the courts to deter police from violating a defendant's Fourth Amendment rights. 299 Kan. at 768-69. But there are exceptions to the exclusionary rule, including the good-faith exception. *State v. Carlton*, 297 Kan. 642, 646, 304 P.3d 323 (2013).

The good-faith exception to the exclusionary rule initially applied when police reasonably relied on a search warrant that was later found to be invalid, but the exception was later extended to police who reasonably rely on a statute authorizing a warrantless search that is later determined to be unconstitutional. *Illinois v. Krull*, 480 U.S. 340, 349-50, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987); *United States v. Leon*, 468 U.S. 897, 921-24, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984); *State v. Daniel*, 291 Kan. 490, 498-500, 242 P.3d 1186 (2010) (adopting *Krull*), *cert. denied* 563 U.S. 945 (2011). In order to determine whether an officer reasonably relied on a statute, courts consider whether the legislature "'wholly abandoned its responsibility to enact constitutional laws'" and whether the statute was so clearly unconstitutional that a reasonable officer should have known that it was unconstitutional. *Daniel*, 291 Kan. at 500 (quoting *Krull*, 480 U.S. at 355). The question of whether the good-faith exception applies is a question of law, reviewed by this court independently and without any required deference to the district court. See *State v. Karson*, 297 Kan. 634, 639-40, 304 P.3d 317 (2013); *State v. Hoeck*, 284 Kan. 441, 447, 163 P.3d 252 (2007).

Kraemer claims the district court erroneously applied the good-faith exception to the exclusionary rule to the facts in this case. We disagree. The criminal penalty statute was struck down by the Kansas Supreme Court as unconstitutional only after Kraemer's arrest. At the time Officer Constantino arrested Kraemer, K.S.A. 2015 Supp. 8-1001(k), a facially valid statute, required that the officer advise Kraemer of the criminal consequences of refusing to submit to the test before asking Kraemer to do so. At that time, the Kansas Supreme Court had not yet found the statute unconstitutional. Although the Kansas Supreme Court ultimately struck down the criminal penalty statute, similar statutes in other states have been deemed constitutional by those states. See *State v. Bernard*, 859 N.W.2d 762 (Minn.), *cert. granted* 136 S. Ct. 615 (2015); *State v. Beylund*, 861 N.W.2d 172 (N.D.), *cert. granted* 136 S. Ct. 614 (2015); *State v. Birchfield*, 858 N.W.2d 302 (N.D.), *cert. granted* 136 S. Ct. 614 (2015).

We note that the United States Supreme Court has granted petitions for certiorari and consolidated the cases cited above from North Dakota and Minnesota for consideration of whether, in the absence of a warrant, a state may make it a crime for a person to refuse to take a chemical test to detect the presence of alcohol in the person's blood. Those petitions for certiorari were granted in December 2015, well after Kraemer's arrest. We find nothing here to suggest either that the Kansas Legislature wholly abandoned its responsibility to enact constitutional laws or that the statute was so clearly unconstitutional at the time of Kraemer's arrest that a reasonably well-trained officer would have known that it was unconstitutional; thus, Officer Constantino would not have known the written and oral implied consent advisory informing Kraemer that he might be charged with a separate criminal offense for refusal of requested testing was coercive. As such, suppressing the evidence in this case would do nothing to deter police from violating a defendant's Fourth Amendment rights because the officer acted in good faith in following the statute in effect at the time. See *Pettay*, 299 Kan. at 768. The district court correctly applied the good-faith exception to the exclusionary rule.

Affirmed.