NOT DESIGNATED FOR PUBLICATION

No. 113,741

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

PEDRO RINCON, JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; RENE S. YOUNG, judge. Opinion filed July 15, 2016.
Affirmed.

*Roger D. Struble*, of Blackwell & Struble, LLC, of Salina, for appellant.

*Brock R. Abbey*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before MALONE, C.J., GREEN and GARDNER, JJ.

*Per Curiam*:  Pedro Rincon, Jr., appeals his felony conviction of driving under the
influence of alcohol or drugs (DUI). Rincon first claims the district court erred in denying
his motion to suppress evidence. Specifically, Rincon argues that the district court erred
in applying the good-faith exception to the exclusionary rule to allow the admission at
trial of evidence of his breath alcohol test obtained through a search that Rincon claims
violated his constitutional rights. Rincon also claims the district court erred in denying his
motion for mistrial after a police officer testified at trial about Rincon's preliminary
breath test (PBT). Finding no reversible error, we affirm the district court's judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

On October 20, 2013, at approximately 11:10 p.m., Officer Tyler Goldsby of the Salina Police Department was dispatched to a McDonald's restaurant. Officer Jeffery Browne also arrived at the scene to assist. When Goldsby arrived at the McDonald's, he saw a yellow pickup truck stopped and idling in the outside drive-through lane. Goldsby and Browne later learned that the truck was in gear. Inside the truck, Goldsby saw a man later identified as Rincon. Rincon's head was down, his eyes were closed, and he was holding a cell phone in his lap. Goldsby tried to rouse Rincon by shining his flashlight through the truck's window and knocking on the window. When that did not work, Goldsby and Browne began rocking the truck from side to side and, after a few minutes, Rincon woke up. When Rincon rolled down the truck window, Goldsby smelled alcohol and noticed Rincon's red, watery, bloodshot eyes.

At Goldsby's request, Rincon exited the truck, and Goldsby smelled alcohol coming from Rincon. Although he avoided answering at first, Rincon eventually admitted he had been drinking at a nearby bar that night. Based on this information, Goldsby decided to conduct field sobriety tests. When Rincon performed the walk-and-turn test, Goldsby noticed five out of eight possible clues that Rincon was intoxicated. During the one-leg-stand test, Rincon exhibited another sign of intoxication. After Rincon failed a PBT, Goldsby arrested him for DUI and transported him to the county jail.

At the jail, Goldsby gave Rincon a copy of the DC-70 form, also called the implied consent advisory, and read it aloud to Rincon. Goldsby then asked Rincon to submit a breath sample for testing. At 12:18 a.m., Rincon provided the sample; it showed an alcohol level of 0.131, over the legal limit in Kansas of 0.08. Goldsby provided Rincon with his *Miranda* rights and Rincon agreed to speak with him. Rincon admitted that he had drank five bottles of beer that night and he had driven to the McDonald's.

2

On October 23, 2013, the State charged Rincon with one count of felony DUI (third offense). Rincon subsequently filed a motion to suppress the statements and the evidence seized as a result of his detention and arrest. In the motion, Rincon argued that the results of the field sobriety testing were not sufficient probable cause to arrest and that the implied consent advisory was so coercive that the consent he gave after hearing the advisory was not voluntary. Rincon asserted that the district court should suppress the results of the breath test because the consent was invalid under the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights.

The State filed a response to the motion, arguing first that because the breath test was reasonable, it did not implicate Fourth Amendment protections. Second, the State contended that Rincon had adequately consented simply by voluntarily operating a motor vehicle on Kansas roadways. That consent, according to the State, was valid even in light of the implied consent advisory's threats of criminal sanctions or administrative penalties. The State also characterized the breath test as a proper search incident to a valid arrest. Finally, the State claimed that even if the search violated Rincon's constitutional rights, the court should apply the good-faith exception to the exclusionary rule and decline to suppress the evidence because Goldsby had relied on lawfully enacted statutes and the DC-70 form, which the Kansas Department of Revenue issues.

On December 5, 2014, the district court held a hearing on the motion to suppress. The State called Goldsby and Browne to testify and showed recordings from the body camera Goldsby wore that night. Rincon also testified, stating that he understood that if he refused the breath test, he would be charged with a separate crime, which left him feeling unable to refuse the test. Rincon argued again that the implied consent advisory was so coercive that it rendered his consent involuntary. He also asserted that the good-faith exception to the exclusionary rule did not apply because the officers should have known that the legitimacy of the implied consent advisory was being challenged in court at the time Rincon was given the advisory. The State reasserted its argument that the

3

advisory was not unduly coercive and, even if it was, the good-faith exception should apply. At the end of the hearing, the district court took the matter under advisement.

On January 5, 2015, the district court issued its decision from the bench. The judge found that the implied consent advisory was inherently coercive and rendered Rincon's consent involuntary, which meant that the breath test violated the Fourth Amendment unless another exception to the warrant requirement applied. The judge rejected the State's assertion that the search was a proper search incident to arrest, noting the breath test was not contemporaneous to the arrest nor did it protect the arresting officers. However, the judge found that the good-faith exception to the exclusionary rule applied because the officers involved were "merely doing their duty as required by the statutes as they now stand." Thus, the district court denied Rincon's motion to suppress.

Rincon's jury trial began on February 5, 2015. The State called Goldsby and Browne to testify and admitted into evidence and published to the jury a recording from the body camera Goldsby used on the night of the arrest. James Miller, the records keeper for the Salina Police Department's Intoxilyzer equipment, testified that the Intoxilyzer machine Goldsby had used had been certified and was working properly. Rincon testified that, on the night in question, he was at a rodeo at his aunt's house from 10 or 11 a.m. until sundown. Then he met some other people at a bar. When Rincon left the bar, he went to McDonald's, but the line in the drive-through was so long and moved so slowly that he fell asleep. Rincon testified that he did not feel he was too drunk to drive when he left the bar and he had not struck anything on his way to McDonald's.

Deliberating for less than 30 minutes, the jury found Rincon guilty of DUI. On April 20, 2015, the district court sentenced Rincon to 12 months in the county jail with probation granted after 90 days and eligibility for work release after 72 hours in jail. Rincon timely filed a notice of appeal.

4

Rincon first claims the district court erred in denying his motion to suppress. As he argued in the district court, Rincon contends that his consent to the breath test was involuntary due to the coercive nature of the implied consent advisory and that the district court erred in applying the good-faith exception. Specifically, Rincon asserts that Goldsby's reliance on the statute requiring him to read Rincon the implied consent advisory was not reasonable. In response, the State argues that the district court correctly applied the good-faith exception and properly denied the motion to suppress.

In reviewing a district court's decision on a motion to suppress, the appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. The ultimate legal conclusion is reviewed using a de novo standard. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014).

K.S.A. 2015 Supp. 8-1025, which became effective on July 1, 2012, criminalizes the refusal to submit to a breath alcohol test under certain circumstances, including when the driver has a prior conviction of DUI or a prior test refusal. Likewise, K.S.A. 2015 Supp. 8-1001, known as the Kansas Implied Consent Law, states that before a breath alcohol test can be administered to a driver, a law enforcement officer shall give oral and written notice that refusal of such a test is a crime if the driver has a prior conviction of DUI or a prior test refusal. K.S.A. 2015 Supp. 8-1001(k)(4). Here, Rincon had prior DUI convictions, so the threat of criminal sanctions for refusing a test applied to him.

In *State v. Ryce*, 303 Kan. 899, 945-47, 368 P.3d 312 (2016), our Supreme Court held that K.S.A. 2014 Supp. 8-1025 was facially unconstitutional because it punishes an individual for withdrawing his or her consent to a search even though the right to withdraw consent is a corollary to the constitutional requirement that consent be free and voluntary. In *State v. Nece*, 303 Kan. 888, 889, 367 P.3d 1260 (2016), our Supreme Court

5

held that a driver's consent to a breath test premised on the threat of criminal prosecution for test refusal "was unduly coerced because, contrary to the informed consent advisory, the State could not have constitutionally imposed criminal penalties if [the driver] had refused to submit to breath-alcohol testing. Thus, because [the] consent was premised on the inaccurate information in the advisory, [the] consent was involuntary."

Here, based on the holdings in *Ryce* and *Nece*, the district court did not err in ruling that the implied consent advisory's coercive nature rendered Rincon's consent involuntary. The only remaining issue in this appeal is whether the district court erred in allowing the evidence of Rincon's breath test to be admitted under the good-faith exception to the exclusionary rule. Whether the district court erred in applying the good-faith exception is a question of law subject to unlimited review. See *State v. Carlton*, 297 Kan. 642, 645-46, 304 P.3d 323 (2013).

> "Evidence obtained in violation of the Fourth Amendment is subject to the exclusionary rule, which was created by the United States Supreme Court to deter police misconduct. *Davis v. United States*, 564 U.S. [229, 236-37, 131 S. Ct. 2419], 180 L. Ed. 2d 285 (2011). Kansas similarly recognizes the exclusionary rule in criminal proceedings is an appropriate remedy for an unlawful search. See [*State v. Daniel*, 291 Kan. 490, 496, 242 P.3d 1186 (2014)]. But neither the Fourth Amendment nor § 15 of the Kansas Constitution Bill of Rights expressly prohibits the use of evidence obtained in violation of their respective protections. [Citation omitted.] Exclusion is not a personal constitutional right; rather, its purpose is to deter violations by the State. [Citations omitted.] Accordingly, exceptions to the exclusionary rule exist. [Citation omitted.]" *Carlton*, 297 Kan. at 646.

As the United States Supreme Court recognized in *Illinois v. Krull*, 480 U.S. 340, 349-50, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987):

> "The application of the exclusionary rule to suppress evidence obtained by an officer acting in objectively reasonable reliance on a statute would have as little deterrent effect

6

on the officer's actions as would the exclusion of evidence when an officer acts in objectively reasonable reliance on a warrant. *Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law.* If the statute is subsequently declared unconstitutional, excluding evidence obtained pursuant to it prior to such a judicial declaration will not deter future Fourth Amendment violations by an officer who has simply fulfilled his responsibility to enforce the statute as written. To paraphrase the Court's comment in [*United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677, *reh. denied* 468 U.S. 1250 (1984)]: 'Penalizing the officer for the [legislature's] error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.' [Citation omitted.]" (Emphasis added.)

In *State v. Daniel*, 291 Kan. 490, 242 P.3d 1186 (2014), our Supreme Court adopted the United States Supreme Court's application of the good-faith exception to situations in which the evidence in question was obtained by a law enforcement officer who was acting "in objectively reasonable reliance" on a statute later found unconstitutional. 291 Kan. at 498. Thus, the precise issue here is whether Goldsby, in providing Rincon with the implied consent advisory, objectively and reasonably relied on K.S.A. 2015 Supp 8-1025 and K.S.A. 2015 Supp. 8-1001(k)(4) that were later invalidated by the Kansas Supreme Court.

As both parties acknowledge, this court recently found the good-faith exception applicable in a circumstance where a law enforcement officer, pre-*Ryce*, obtained consent to breath testing after reading the implied consent advisory. See *State v. Kraemer*, 52 Kan. App. 2d 686, Syl. ¶ ¶ 6-7, 371 P.3d 954 (2016), *petition for rev. filed* May 31, 2016. In *Kraemer*, this court stated:

"Kraemer claims the district court erroneously applied the good-faith exception to the exclusionary rule to the facts in this case. We disagree. The criminal penalty statute was struck down by the Kansas Supreme Court as unconstitutional only after Kraemer's arrest. At the time Officer Constantino arrested Kraemer, K.S.A. 2015 Supp. 8-1001(k), a facially valid statute, required that the officer advise Kraemer of the criminal

7

consequences of refusing to submit to the test before asking Kraemer to do so. At that time, the Kansas Supreme Court had not yet found the statute unconstitutional. Although the Kansas Supreme Court ultimately struck down the criminal penalty statute, similar statutes in other states have been deemed constitutional by those states. [Citations omitted.]" 52 Kan. App. 2d at 698.

Although a petition for review is pending in *Kraemer*, we adopt the court's analysis in that case and find that the district court did not err in applying the good-faith exception under the facts of this case. Here, Goldsby acted in good faith when he read Rincon the implied consent advisory, including informing him that the refusal to submit could be prosecuted as a crime separate from the DUI charge. At that time, Goldsby had no reason to question the judgment of the legislature in requiring the implied consent advisory. Goldsby's reliance on the statute was objectively reasonable: the statute was not clearly unconstitutional and Kansas caselaw had "often note[d] that the 'coercive' effect of informing a suspect of the negative legal consequences of refusing to consent to blood-alcohol testing . . . [did] not render consent involuntary as long as the information about the negative consequences was accurate. [Citation omitted.]" *Nece*, 303 Kan. at 890. Our Supreme Court did not invalidate K.S.A. 2015 Supp. 8-1025 and K.S.A. 2015 Supp. 8-1001(k)(4) until after Goldsby read Rincon the implied consent advisory.

By giving the implied consent advisory, Goldsby was "simply fulfill[ing] his responsibility to enforce the statute as written." See *Krull*, 480 U.S. at 350. Penalizing Goldsby for doing so would not deter future Fourth Amendment violations, which is the purpose of the exclusionary rule. Moreover, Rincon does not assert that by passing K.S.A. 2015 Supp. 8-1001(k)(4), the legislature abandoned its responsibility to enact constitutional laws, which could also prevent objectively reasonable reliance on the statute. See *Krull*, 480 U.S. at 355. Under the circumstances of this case, the district court did not err in applying the good-faith exception and denying Rincon's motion to suppress.

8

Next, Rincon claims the district court erred in denying his motion for mistrial. More facts are necessary to understand this issue. During Goldsby's trial testimony, the prosecutor asked, "What all went into your decision to arrest Mr. Rincon?" Goldsby replied, "His standard field sobriety testing, the preliminary breath test, as well as—" at which point, defense counsel objected. The district court sent the jury out of the courtroom, and Rincon requested a mistrial because Goldsby had mentioned the PBT. Rincon based his objection and request for mistrial on K.S.A. 2015 Supp. 8-1012(d), which generally prohibits the use of PBT results in criminal prosecutions for DUI.

The district court denied Rincon's request for a mistrial but agreed to give a limiting instruction to the jury if Rincon desired. Although he repeatedly asserted that a jury instruction could not cure the error, Rincon drafted an instruction. After bringing the jury back into the courtroom, the judge instructed:  "Officer Goldsby testified in violation of Kansas statutes regarding the existence of a preliminary breath test as a basis for his arrest. You must disregard that testimony and decide this case only on evidence properly admitted." Postconviction, Rincon filed a motion renewing his midtrial request for a mistrial. He argued that a mistrial was warranted because Goldsby's testimony about the PBT results violated the statutory prohibition on such testimony and the error could not be cured by an instruction. At the sentencing hearing, the district court denied the motion.

On appeal, Rincon asserts that the district court abused its discretion in denying his motion for mistrial and that the error denied him his right to a fair trial. The State alleges that the district court did not abuse its discretion in denying the motion for mistrial and points out that juries presumably follow instructions such as the curative one given here. Finally, the State asserts that any error was harmless because there was no reasonable probability that the mention of a PBT affected the outcome of Rincon's trial.

"We review a district court's decision denying a motion for mistrial for an abuse of discretion. [Citation omitted.] A district court abuses its discretion if its decision is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. [Citation omitted.]" *State v. Warren*, 302 Kan. 601, 607-08, 356 P.3d 396 (2015).

> "Pursuant to K.S.A. 22-3423(1)(c), a district court may declare a mistrial if prejudicial conduct, inside or outside the courtroom, makes it impossible for the trial to proceed without injustice to the prosecution or defense. When evaluating a motion for mistrial under this provision, the district court must take the first step of deciding whether the prejudicial conduct created a fundamental failure in the proceeding. If so, the district court's second step is to decide whether the prejudicial conduct made it impossible to continue the proceeding without denying the parties a fair trial. [Citation omitted.] Under the second step, the court considers whether the conduct caused prejudice that could not be cured or mitigated through jury admonition or instruction, resulting in an injustice. [Citation omitted.] 302 Kan. at 608.

K.S.A. 22-3423 sets forth six sets of circumstances under which a district court may terminate a trial and order a mistrial. As the State points out, Rincon has never explicitly identified—either before the district court or on appeal—which subsection of K.S.A. 22-3423 he believes authorized the district court to declare a mistrial here. Although he fails to explicitly say so, it appears that Rincon argues that because K.S.A. 2015 Supp. 8-1012(d) prohibits the admission of PBT results in a criminal DUI trial, Goldsby's testimony that he based his decision to arrest Rincon in part on the PBT was a fundamental failure in the proceeding. The district court similarly did not make a specific finding on whether Goldsby's reference to the PBT constituted a fundamental failure in the proceedings. However, the district court's offer to give a limiting instruction supports the assumption that the district court believed the testimony was at least erroneous and could prejudice Rincon.

Kansas appellate courts have not defined what constitutes a "fundamental failure" in the context of a motion for mistrial. However, cases in which our Supreme Court has found a fundamental failure in the proceedings to support a mistrial involve very serious failures. See *State v. Logsdon*, 304 Kan. 3, 27, 38-40, 371 P.3d 836, (2016) (finding error where inadmissible hearsay evidence was admitted and proceeding to the prejudice portion of reviewing the district court's denial of the defendant's motion for mistrial); *State v. Santos-Vega*, 299 Kan. 11, 21-26, 321 P.3d 1 (2014) (finding fundamental failure when State's witness violated an order in limine and the defendant's Fourteenth Amendment Due Process rights as protected by *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 [1976]).

Here, whether Goldsby's reference to the PBT constituted a fundamental failure in the proceedings is a close call. Goldsby simply listed the various factors that went into his decision to arrest Rincon and he never stated the specific result of the PBT, explained how the test was administered, or mentioned that Rincon had failed the test.

However, the existence of a fundamental failure in the proceedings alone does not resolve the question of whether the district court should have granted a mistrial. The second step in the analysis is to decide whether the prejudicial conduct made it impossible to continue the proceeding without denying the parties a fair trial. *Warren*, 302 Kan. at 608. Here, the district court decided that any taint could be cured by a limiting instruction. In deciding whether the district court abused its discretion by giving the limiting instruction, an appellate court may consider the entire record of the trial to assess whether the harm or prejudice rose to the level of causing injustice. *State v. Moyer*, 302 Kan. 892, 907, 360 P.3d 384 (2015). Because the admission of the PBT evidence infringed on a statutory, not a constitutional, right, we must decide whether, in light of the entire record, there is a reasonable probability that the PBT evidence affected the outcome of the trial. See *Logsdon*, 304 Kan. at 39.

11

Rincon argues that there is such a reasonable probability in light of evidence that his speech during the encounter with police was normal; he had been at a rodeo all day, so he was tired; the line at McDonald's was long; and he is a heavy sleeper. Rincon claims that without the PBT testimony the jury could have concluded that he simply fell asleep after a long day while he was waiting to get food. He argues that the mention of the PBT implied to the jury that Goldsby arrested Rincon because the PBT showed an alcohol level over the legal limit.

The State's position is more persuasive. The evidence of Rincon's guilt was overwhelming. The jury watched a video of the encounter between Goldsby and Rincon. Goldsby testified that Rincon's eyes were watery and bloodshot; that he smelled alcohol; and that Rincon admitted to drinking five beers that evening. The jury also heard the evidence that Rincon failed the field sobriety tests administered by Goldsby. Most importantly, the State properly admitted evidence that Rincon's Intoxilyzer breath test showed his alcohol level was well over the legal limit. Even disregarding Goldsby's testimony about the PBT, there was strong evidence of Rincon's guilt.

Moreover, as the State points out, we presume that juries follow the district court's instructions. *State v. Barber*, 302 Kan. 367, 378, 353 P.3d 1108 (2015). Here, the district court instructed the jury to disregard the PBT testimony and decide the case only on evidence properly admitted. Rincon presents no reason to believe that this jury disregarded the instruction, nor does the record on appeal provide any reason to so believe. In light of the record as a whole, there is no reasonable probability that the PBT testimony affected the outcome of the trial. Thus, we conclude that the district court did not abuse its discretion in denying Rincon's motion for new trial.

Affirmed.