NOT DESIGNATED FOR PUBLICATION

No. 121,136

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MAX CAMPBELL JR.,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Phillips District Court; PRESTON PRATT, judge. Opinion filed April 10, 2020. Affirmed.

*Andrew J. Walter*, of Walter & Walter, LLC, of Norton, for appellant.

*Charles P. Bradley*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and BUSER, JJ.

PER CURIAM: Max Campbell Jr. appeals the suspension of his driving privileges. On appeal, he argues that the trial court erred in ruling the following: (1) The law enforcement officer had reasonable suspicion to extend the traffic stop, (2) the law enforcement officer had reasonable suspicion to request a preliminary breath test, and (3) the law enforcement officer had probable cause to believe Campbell was driving under the influence of alcohol (DUI). We disagree. And because we conclude that the officer had reasonable suspicion to investigate Campbell for DUI and that probable cause existed to arrest him, we affirm.

1

FACTS:

On June 11, 2018, Phillips County Sheriff's Deputy Brandon Gaede and another deputy saw Max Campbell standing in front of a van around midnight. They thought this was "a little odd." So, the deputies stopped to check on Campbell and his van to make sure it was working. Campbell told the deputies that he had heard a sound coming from the van, and he was worried that his grill had broken and was dragging on the ground.

During this interaction, Deputy Gaede did not see any signs of impairment. Deputy Gaede noticed that Campbell had trouble standing and walking, but Campbell explained that he had a bad back and bad knees. Deputy Gaede allowed Campbell to leave in his van.

Campbell turned right and drove up onto the curb of the road, almost striking a pole. Deputy Gaede turned on his emergency lights. Campbell did not immediately stop in response to the deputy's emergency lights. When he eventually stopped, Deputy Gaede asked Campbell what caused him to hit the curb and almost hit the pole. Campbell explained he was drinking from a large cup of water.

While talking with Campbell, Deputy Gaede did not smell any odor of alcohol. Deputy Gaede tried to detect if Campbell had been drinking by getting two feet or less from Campbell while they were speaking. And during this second interaction with Campbell, Deputy Gaede did not observe Campbell slurring his speech or having bloodshot eyes.

After running Campbell's van registration and insurance information, Deputy Gaede returned to Campbell's van and returned his papers. Then Deputy Gaede spoke with Campbell about his traffic infraction. For example, at Campbell's trial, Deputy Gaede explained that he "returned, . . . gave [Campbell] his insurance information, and

2

spoke with him a little longer about" his concerns he had on Campbell's traffic infraction in going off the road. At that moment, Deputy Gaede smelled alcohol.

Deputy Gaede asked Campbell if he had been drinking and Campbell stated that he had one beer. Based on Campbell driving off the road and almost hitting a pole, as well as the odor of alcohol, Deputy Gaede told Campbell he would need him to complete some field sobriety tests. When Campbell got out of the van, Deputy Gaede did not see any problems concerning Campbell's balance and coordination.

After Campbell left his van, Deputy Gaede asked Campbell to take a horizontal gaze nystagmus test (HGN). When Campbell was attempting to perform the HGN, Campbell needed to sit on the tailgate of a patrol pickup to perform the test. Campbell explained that his bad back and bad knees kept him from standing during the test. Campbell then declined to perform the one-leg-stand and walk-and-turn tests because of his back and knees.

Deputy Gaede then asked Campbell to take a preliminary breath test (PBT). The factors that Deputy Gaede relied on for requesting the PBT were the following: Campbell's driving off the roadway; Campbell's inability to perform the field sobriety tests because of his medical conditions; Campbell's odor of consumed alcohol about him; and Campbell's refusal to take the PBT test. Deputy Gaede then placed Campbell under arrest.

After Deputy Gaede arrested Campbell, a search of Campbell's van revealed an open container of alcohol. Campbell's blood alcohol content was 0.12. KDOR suspended Campbell's driver's license. Campbell timely filed a petition for review in the Phillips County District Court. At the bench trial, Deputy Gaede's testimony was inconsistent on whether Campbell had slurred speech and bloodshot or watery eyes. Based on his inconsistent testimony, the trial court found that Campbell did not have slurred speech or bloodshot eyes. Nevertheless, the trial court found that Campbell's eyes were watery.

3

Following the trial, the trial court denied Campbell's petition for review and suspended his driver's license. Campbell timely appeals.

*Did the Trial Court Err in Ruling the Deputy Had Reasonable Suspicion to Expand the Stop?*

Campbell argues that the traffic stop was expanded twice without reasonable suspicion: First, Campbell argues that he should have been allowed to proceed on his way without being subjected to further delay for additional questioning after Deputy Gaede returned his registration and insurance. Campbell relies on *Rodriguez v. United States*, 575 U.S. 348, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015), for the following legal proposition: eliminating de minimis intrusions of a citizen's liberty absent valid reasonable suspicion. Our Supreme Court applied *Rodriguez* in *State v. Jimenez*, 308 Kan. 315, 420 P.3d 464 (2018), which Campbell cites for the baseline proposition that an officer's questions about "travel plans" extends the duration and scope of an ordinary traffic stop in violation of the Fourth Amendment to the United States Constitution. Campbell notes that Deputy Gaede had returned all of Campbell's paperwork before Deputy Gaede "began asking questions of [Campbell] about his travel plans." He argues that, with no indicia of DUI, Deputy Gaede impermissibly extended the traffic stop and only smelled alcohol for the first time during the additional questioning.

Second, Campbell argues that Deputy Gaede's request for him to perform sobriety tests was without reasonable suspicion. But by this point in the stop, Deputy Gaede had already smelled alcohol. Campbell, however, asserts that reasonable suspicion was negated by his ability to answer all questions, his ability to speak without slurring, and his admission to consuming only one beer. Thus, he argues that the only indicia of impairment were the smell of alcohol and the admission of consuming one beer. On that basis, Campbell contends that these two indicia of impairment do not amount to reasonable suspicion.

4

On the other hand, KDOR argues that the *Rodriguez'* and *Jimenez'* holdings are inapplicable to this case. With that in mind, KDOR argues that some officer questions are permissible when they relate to the purpose of the stop. *State v. Schooler*, 308 Kan. 333, 347, 419 P.3d 1164 (2018) (quoting *Jimenez*, 308 Kan. at 329). KDOR correctly points out that the United States Supreme Court in *Rodriguez* is factually distinguishable because the facts in this case fall within the exceptions stated in *Rodriguez* and *Jimenez*. This exception expressly allows officers to follow up on highway or driver safety concerns.

When considering if reasonable suspicion exists, appellate courts review the trial court's factual findings for substantial competent evidence and legal conclusions de novo. *State v. Moore*, 283 Kan. 344, 350, 154 P.3d 1 (2007). "[I]nvestigatory detentions are constitutionally permissible if an objective officer would have a reasonable and articulable suspicion that the detainee committed, is about to commit, or is committing a crime." *State v. Hanke*, 307 Kan. 823, 828, 415 P.3d 966 (2018). Investigatory detentions "'must be temporary and last no longer than is necessary to effectuate the purpose of the stop.'" *State v. Doelz*, 309 Kan. 133, 139, 432 P.3d 669 (2019). Public safety or community caretaking reasons may justify an encounter between an individual and police even when no civil or criminal infractions have occurred, so long as the encounter is based on specific and articulable facts. *Hanke*, 307 Kan. at 827-28.

On Campbell's first argument, Deputy Gaede's conversation with Campbell did not require reasonable suspicion of criminal activity because it did not expand the scope of the initial traffic stop. By way of example, "[t]o qualify as a task necessary to process the initial stop, information gathering must be limited to the infraction prompting the stop or those other matters directly related to traffic code enforcement, i.e., 'ensuring that vehicles on the road are operated safely and responsibly.'" *Jimenez*, 308 Kan. at 317 (quoting *Rodriguez*, 575 U.S. at 355). Moreover, "the officer may also take 'negligibly burdensome precautions' to complete the stop safely. But on-scene investigation into

5

other crimes diverts from that mission and cannot become a permissible de minimis intrusion." *Jimenez*, 308 Kan. at 317.

The facts here resemble the example stated in *Jimenez* about a driver's inability to control a vehicle:

> "For example, and without prejudging specific scenarios, consider when a vehicle is noticed veering off the roadside. Asking how long the driver has been behind the wheel reasonably could be seen as exploring fatigue issues, which relates to the initial infraction and safe vehicle operation. Similarly, asking whether the driver is under the influence could be related to that same infraction. In both instances, the responses may explain the erratic driving and might arguably be related to the officer's decision 'whether to issue a traffic ticket. . . . ' 135 S. Ct. at 1615. But such inquiry would be much harder to justify when the stop is 'for a loud muffler, a burned-out license plate light, or a just-ended parking violation.'" 308 Kan. at 329.

Based on his testimony, Deputy Gaede expressed a statement of concern immediately after handing Campbell his registration. The context justified the comment. When Deputy Gaede first encountered Campbell, Campbell was stopped on the side of the road and complaining of car trouble. Immediately after driving away from that encounter, Campbell lost control of his vehicle and veered off the roadway.

Highway safety is an interest "different in kind from the Government's endeavor to detect crime in general." *Rodriguez*, 575 U.S. at 357. Deputy Gaede's comments were not an on-scene investigation into other crimes which diverted from his mission of conducting the traffic stop. See *Jimenez*, 308 Kan. at 317. Rather, his comments were directly related to the traffic stop itself. Deputy Gaede's statement of concern could relate to the fitness of the driver or the vehicle. And in this case, Campbell himself gave Deputy Gaede reason to be concerned about his van. Because his statements were within the scope of the initial stop and were therefore permissible, we need not address if Deputy

6

Gaede had reasonable suspicion to expand the stop for additional questioning. Thus, Campbell's argument fails.

For Campbell's second argument, Deputy Gaede again had reasonable suspicion to request sobriety tests once he smelled alcohol and Campbell admitted to drinking alcohol. See *City of Wichita v. Molitor*, 301 Kan. 251, 268, 341 P.3d 1275 (2015). Campbell argues that Deputy Gaede did not have reasonable suspicion to request sobriety tests, but Campbell provides no citations in support of this argument and it is directly contrary to precedent. See 301 Kan. at 268 (noting that observable indicia of intoxication which can support reasonable suspicion are the smell of alcohol and the driver's admission to having consumed alcohol, in addition to the initial cause of the stop). As a result, Campbell's argument also fails.

*Did the Trial Court Err in Ruling That the Officer Had Reasonable Suspicion to Request a Preliminary Breath Test?*

Campbell argues that the factors Deputy Gaede relied on in requesting a PBT were the following:  Campbell's driving off the roadway, Campbell's inability to perform field sobriety tests, and Campbell's odor of consumed alcohol about him. Campbell argues that these factors are insufficient to establish reasonable suspicion because the factors were counterbalanced by the absence of impairment indicators—no slurred speech, no bloodshot eyes, and "no field sobriety tests [which] Campbell performed or attempted to perform which indicated impairment." Additionally, Campbell argues that his admission to consuming only one beer undermines reasonable suspicion. To that end, Campbell relies on *Molitor* for the distinction between having alcohol in the body versus having a blood alcohol content (BAC) over the legal limit.

KDOR argues Campbell's late hour of his stop, his watery eyes, his admission of alcohol consumption, his odor of alcohol, his impaired driving, his poor balance, and his inability to complete sobriety tests gave Deputy Gaede reasonable suspicion supporting a

7

PBT. As with Campbell's previous argument, when considering if reasonable suspicion exists, appellate courts review the trial court's factual findings for substantial competent evidence and legal conclusions de novo. *Moore*, 283 Kan. at 350.

At the time of the stop, K.S.A. 2017 Supp. 8-1012(b) controlled the authority for law enforcement officers to request PBTs:

"A law enforcement officer may request a person who is operating or attempting to operate a vehicle within this state to submit to a preliminary screening test of the person's breath or saliva, or both, if the officer has reasonable suspicion to believe the person has been operating or attempting to operate a vehicle while under the influence of alcohol or drugs or both alcohol and drugs."

Reasonable suspicion is determined by looking at the totality of circumstances as viewed by a reasonable law enforcement officer. *State v. Edgar*, 296 Kan. 513, 521, 294 P.3d 251 (2013). To request a PBT, an officer must have reasonable suspicion to believe the person has been operating or attempting to operate a vehicle while under the influence of alcohol, that is, a BAC of .08 or more. *Molitor*, 301 Kan. at 266-67.

Campbell's comparison of his case to the facts of *Molitor* is misplaced because Campbell did not perform the sobriety tests that Molitor completed. The *Molitor* court noted that "the subjective observations which might suggest to Officer Diaz that Molitor was illegally intoxicated were offset by the objective indications that he was not." 301 Kan. at 268. As noted by the *Molitor* court, those indications were that Molitor had no slurred speech, had no difficulty producing his driver's license, did not lose his balance while exiting his vehicle or walking, "and, most importantly, passed the two admissible SFSTs." 301 Kan. at 268. Campbell maintains that his failure to take the tests at all should be treated the same way the *Molitor* court treated passing the sobriety tests. But Campbell provides no support for this contention. Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the

face of contrary authority is akin to failing to brief the issue. *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019).

Failure to perform field sobriety tests would not result in the same outcome as successfully completing the tests. Our Supreme Court has already addressed how physical impediments affected sobriety testing in *City of Dodge City v. Norton*, 262 Kan. 199, 205, 936 P.2d 1356 (1997). Norman Norton complained of knee problems to the law enforcement officer in that case, like Campbell in this case. Our Supreme Court held that drivers "who fail field sobriety tests due to impairments other than drunkenness will be protected by the results of the blood or breath testing performed following arrest." 262 Kan. at 205. Successful completion may offset the factors supporting reasonable suspicion of DUI. *Molitor*, 301 Kan. at 268. But because Campbell did not successfully complete any sobriety tests, Deputy Gaede had the reasonable suspicion to require another test for impairment, the PBT. As a result, Campbell's argument fails.

*Did the Trial Court Err in Ruling That the Officer Had Probable Cause to Arrest Campbell for DUI?*

Warrantless arrest is justified when, during a lawful detention, an officer develops probable cause to believe the individual has committed or is committing an offense. *State v. Keenan*, 304 Kan. 986, 994, 377 P.3d 439 (2016). Probable cause exists when the officer's knowledge of the events creates a reasonable belief that the defendant has committed a specific crime, but it does not require that the officer have evidence of every element of the crime. In evaluating if an officer has probable cause, the court considers the totality of the circumstances, given the information and fair inferences therefrom, known to the officer at the time of the arrest. *State v. Kraemer*, 52 Kan. App. 2d 686, 692, 371 P.3d 954 (2016).

Campbell argues that the trial court erred by discussing only the inculpatory factors and not addressing how the exculpatory factors negated the indicia of impairment.

9

Campbell argues that the first factor negating probable cause was the initial encounter between Deputy Gaede and Campbell. When Deputy Gaede first approached Campbell, who was stopped on the side of the road, Deputy Gaede saw no indicia of impairment and allowed Campbell to leave. Campbell provides another explanation apart from impairment for hitting the curb, namely drinking from a large water cup.

Campbell also notes that, during all interactions, Deputy Gaede saw no problems with balance or coordination, no bloodshot eyes, and no slurred speech. Campbell further notes that the odor of alcohol was slight, not strong, and Deputy Gaede smelled it only during the third conversation. Campbell summarizes the indicia of impairment was based on only the following two things: a slight odor of alcohol and admission to consuming a small amount. Campbell then compares his case to *Chambers v. Kansas Dept. of Revenue*, No. 115,141, 2017 WL 1035442 (Kan. App. 2017) (unpublished opinion), as persuasive authority that the odor of alcohol and admission of consumption of alcohol alone do not even amount to reasonable suspicion, which is a lower standard than probable cause.

Campbell's comparison to *Chambers* is misplaced. Our Supreme Court outlined three factors supporting reasonable suspicion in *State v. Pollman*, 286 Kan. 881, Syl. ¶ 7, 190 P.3d 234 (2008). On appeal, this court in *Chambers* held that only two of the three factors from *Pollman* were present and thus there was no reasonable suspicion that Chambers was DUI. 2017 WL 1035442, at *7. This court declined to consider KDOR's argument that the initial infraction, a defective tag light, was an indicator of intoxication. 2017 WL 1035442, at *7. Thus, the only factors supporting reasonable suspicion were the odor of alcohol that the officer smelled on Chambers' breath and Chambers' admission to drinking. 2017 WL 1035442, at *8-9. This court held that these facts fell short of the *Pollman* standard for reasonable suspicion and affirmed the trial court's reinstatement of Chambers' license. 2017 WL 1035442, at *1, 9.

In *Pollman*, both Pollman and his wife were riding motorcycles when an officer pulled over Pollman's wife for failing to signal a lane change. The officer told Pollman that only his wife was stopped, not him, and Pollman needed to "move along." 286 Kan. at 883. Pollman failed to comply with multiple instructions to stop obstructing the traffic stop by either pulling into a parking lot or at least walking away. At that point, the officer smelled alcohol and asked Pollman if he had been drinking. Pollman admitted to consuming alcohol. Thus, the three factors which justified reasonable suspicion of DUI in *Pollman* were the following: (1) the acts of the initial infraction, (2) the smell of alcohol, and (3) the admission to drinking alcohol. 286 Kan. 881, Syl. ¶ 7; see also *Molitor*, 301 Kan. at 268 (citing *Pollman* as setting a "low bar" for reasonable suspicion).

Here, the facts are dissimilar from *Chambers* and like *Pollman*. Pollman's refusal to follow instructions were one factor giving police reasonable suspicion that his behavior was influenced by intoxication. The initial traffic infraction of a defective tag light in *Chambers* does not relate to behavior in the same way. Here, Campbell's initial infraction of hitting the curb could have multiple explanations, including mechanical trouble, driver fatigue, driver distraction, or intoxication. When combined with the odor of alcohol and the admission to drinking alcohol, the traffic infraction supports reasonable suspicion just as the infraction did in *Pollman*. Thus, Campbell's argument that Deputy Gaede did not even have reasonable suspicion, let alone probable cause, is not supported by *Chambers* and *Pollman*.

We recall our discussion of *Norton* in the preceding section in determining if Deputy Gaede had probable cause to arrest Campbell. The facts here are even more like *Norton* than they are to *Pollman*. Norton failed to stay in his lane and narrowly missed construction barrels. Norton smelled of alcohol and had bloodshot eyes. Norton admitted consuming alcohol. And, as discussed in the preceding section, Norton told the arresting officer that his bad knees were the cause of his inability to complete sobriety tests successfully. Similarly, Campbell left his lane, striking the curb and narrowly missing a pole. Campbell smelled of alcohol and had watery eyes. Campbell admitted to consuming

11

alcohol. Campbell attributed his inability to do sobriety tests to his bad back and, like Norton, bad knees. Deputy Gaede had indicia of Campbell's intoxication that were like the indicia which supported probable cause in *Norton*.

In addition to the same indicia as in *Norton*, Deputy Gaede also had Campbell's refusal to take the PBT as a factor supporting probable cause. PBTs are authorized under K.S.A. 2017 Supp. 8-1012. According to that statute, PBT results "shall be used for the purpose of assisting law enforcement officers in determining whether an arrest should be made and whether to request the tests authorized by K.S.A. 8-1001." The Kansas Legislature explicitly authorized the use of PBT results in determining reasonable grounds; thus, it also authorized the use of PBT refusals. See *Chambers*, 2017 WL 1035442, at *5 (cause to arrest for DUI). An officer may draw a negative inference from a driver's refusal to take a PBT. *Forrest v. Kansas Dept. of Revenue*, 56 Kan. App. 2d 121, 128, 425 P.3d 624 (2018). The refusal amounts to circumstantial evidence that the driver knows he or she has been drinking and would likely fail the test. 56 Kan. App. 2d at 128. Deputy Gaede had probable cause to arrest Campbell for DUI because Deputy Gaede observed the same indicia of intoxication as the officer in *Norton* and had the additional factor of Campbell's refusal to take the PBT. As a result, Campbell's argument fails.

Affirmed.

12