IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 114,143

STATE OF KANSAS,
*Appellee*,

v.

DAVID S. HANKE,
*Appellant*.

SYLLABUS BY THE COURT

1.

When reviewing a motion to suppress evidence, an appellate court reviews the factual underpinnings of a district court's decision for substantial competent evidence and the ultimate legal conclusion drawn from those facts de novo. The ultimate determination of the suppression of evidence is a legal question requiring independent appellate review. The State bears the burden to demonstrate that a challenged search or seizure is lawful.

2.

Investigatory detentions are permitted under the Fourth Amendment to the United States Constitution if an objective officer would have a reasonable and articulable suspicion that the detainee committed, is about to commit, or is committing a crime.

3.

Determining what is reasonable is based on the totality of the circumstances and is viewed in terms as understood by those versed in the field of law enforcement.

1

Review of the judgment of the Court of Appeals in an unpublished opinion filed July 29, 2016. Appeal from Harvey district court; JOE DICKINSON, judge. Opinion filed April 20, 2018. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Jason R. Lane*, assistant county attorney, argued the cause, and *Derek Schmidt*, attorney general, was with him on the brief for appellee.

The decision of the court was delivered by

NUSS, C.J.: This case requires us to decide whether a search of David Hanke's van disclosing drugs and a meth pipe was in violation of the Fourth Amendment to the United States Constitution. The district court and a majority of the Court of Appeals panel ruled it was not. We agree with the lower courts' results because the police officer had reasonable suspicion when he asked for and received Hanke's consent to search. Accordingly, their decisions are affirmed.

## FACTS AND PROCEDURAL HISTORY

According to testimony at the hearing on Hanke's motion to suppress the evidence, as Sergeant Jason Thompson of the Newton Police Department pulled his patrol car into the well-lit parking lot of a Kwik Shop convenience store around 2 a.m., he noticed a van with its engine running parked in a stall in front of the store. Thompson drove through the parking lot and stopped to talk to an acquaintance at a fuel pump. During that conversation, an individual approached and suggested Thompson check on the van's driver because he or she was slumped in the seat and the van had been parked there with its engine running for about an hour.

2

Thompson pulled behind the van and checked the license plate, which showed registration by a Jaclyn Grattan. Thompson parked on the opposite side of the lot and approached the van on foot. According to Thompson, he did not pull behind the van because it was not a traffic stop and he did not want to prevent the driver from freely leaving after Thompson performed his check. At no point did he engage his emergency lights or siren.

As Thompson drew closer, he could see someone slumped to the right in the driver's seat. Considering the uncomfortable positioning and odd posturing, Thompson was unable to immediately determine if the person was purposely sleeping, was having a medical problem, or was under the influence of alcohol or drugs. Thompson knocked on the window, attempting to initiate contact.

According to Thompson, the person—later identified as Hanke—quickly sat up, saw him, and immediately opened the driver's door, which bumped into Thompson. Thompson told Hanke not to hit him with the door but to simply roll the window down. Hanke responded that he had tried to roll the window down. Thompson still could not tell why Hanke had been slumped in the seat. But he believed he startled Hanke when he knocked.

With the door now open, Thompson checked for the smell of alcohol but detected none. He did notice, however, that Hanke seemed to be disoriented and having trouble "fixating" on him while he was addressing Hanke. Thompson further noted Hanke was giving slow responses to his questions. Hanke's overall reaction was inconsistent with Thompson's nearly 20 years of police experience, which often included rousing motorists who were merely asleep. Because of these observations and his resultant suspicion that

3

Hanke might be under the influence of an illegal substance, Thompson asked if Hanke could step out of the van to talk with him a little more.

Hanke agreed and got out of the van. Thompson asked if he was okay and Hanke responded he was fine. But Thompson again observed Hanke was having difficulty focusing and answering questions, adding to Thompson's concern that this behavior might be the result of illegal substance abuse. Thompson then asked Hanke for identification and Hanke produced his driver's license without physical problems. But during this time Thompson continued to observe Hanke looking around a lot and having a difficult time focusing on what Thompson was asking him to do. Thompson confirmed Hanke's identity with a visual check of the license and handed it back.

Due to Hanke's "odd behavior"—plus either being passed out or asleep at the wheel of a parked van with its engine running for approximately an hour in front of the store—and based upon Thompson's experience dealing with impaired drivers, he continued to believe Hanke might be under the influence of drugs. So immediately after handing back the license, Thompson asked if he could search the area of the van in which Hanke had been sitting, specifically the driver's compartment. Hanke agreed. Thompson wanted to search this particular area because of his suspicion Hanke was under the influence and may have been using illegal drugs there before passing out.

Thompson visually checked the surface of the driver's seat and immediate area. He then checked underneath the driver's seat, where he found a small black camera bag with an attached soft sunglasses case. In the sunglasses case Thompson found a smoking pipe with whitish residue inside, which he believed to be methamphetamine. In the camera bag Thompson found baggies containing what he believed to be more methamphetamine as well as marijuana. Thompson estimates that the entire encounter from when he walked up to the van to when he searched it took about three minutes.

4

The State charged Hanke with one count each of unlawful possession of methamphetamine, unlawful possession of marijuana, and possession of drug paraphernalia. After Hanke filed a motion to suppress the evidence under a purported illegal search, the district court found that Hanke gave "voluntary consent" with "no sign of coercion." Accordingly, Hanke's motion to suppress was denied, as well as his subsequent motion to reconsider. Following a bench trial on stipulated facts, Hanke was convicted of each charged crime.

Hanke later acknowledged to the Court of Appeals panel that the encounter started as a valid welfare or public safety stop. But he argued it metamorphosed into an illegal seizure of his person that rendered his consent involuntary due to the coercive nature of the detention and his ignorance of his right to refuse Thompson's search request.

The majority of the panel ruled that under the totality of the circumstances a reasonable person would have felt free to refuse Thompson's requests and terminate the encounter. Accordingly, the entirety of the contact between Thompson and Hanke was a voluntary encounter that did not trigger the protections of the Fourth Amendment to the United States Constitution. *State v. Hanke*, No. 114,143, 2016 WL 4063975 (Kan. App. 2016) (unpublished opinion).

Judge Atcheson dissented, concluding that a reasonable person in Hanke's position would not have felt free to leave or refuse Thompson's request to search. *Hanke*, 2016 WL 4063975, at *12-17.

We granted Hanke's petition for review. Our jurisdiction is provided by K.S.A. 2017 Supp. 22-3602(e).

More facts will be added as necessary to the analysis.

## ANALYSIS

ISSUE: *The district court properly denied Hanke's motion to suppress.*

Hanke maintains Thompson extended an initially legal encounter into an illegal investigatory detention and insufficient attenuation existed between the taint of that illegal detention and the search and seizure of the evidence. He argues that because of this violation of his Fourth Amendment rights, we must reverse the district court's denial of his motion to suppress.

*Standard of review*

The standard of review for a district court's decision on a motion to suppress has two parts. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. But the court's ultimate legal conclusion is reviewed using a de novo standard. *State v. Neighbors*, 299 Kan. 234, 240, 328 P.3d 1081 (2014). The appellate court does not reweigh the evidence or assess the credibility of witnesses. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014). When the facts supporting the district court's decision on a motion to suppress are not disputed, the ultimate question of whether to suppress is a question of law over which the appellate court exercises unlimited review. *State v. Stevenson*, 299 Kan. 53, 57, 321 P.3d 754 (2014).

The parties do not dispute the material facts, so our suppression question is only one of law. And the burden is upon the State to establish the lawfulness of the warrantless search and seizure. See *State v. Carlton*, 297 Kan. 642, 646, 304 P.3d 323 (2013); *State v.*

*Boyd*, 275 Kan. 271, 273, 64 P.3d 419 (2003) (when a motion to suppress evidence is filed, the State bears the burden of establishing the lawfulness of the search and seizure).

*Investigatory detention*

This court has adopted the United States Supreme Court's "totality of the circumstances" test to determine whether a voluntary encounter or a seizure—such as an investigatory detention—has occurred. A voluntary encounter is not a seizure and is thus not afforded protection by the Fourth Amendment. *State v. Thomas*, 291 Kan. 676, 683, 246 P.3d 678 (2011). The district court, Court of Appeals majority, and the State all categorize this as a voluntary encounter throughout.

But Hanke and dissenting judge Atcheson view the encounter, at least at its beginning, as a public safety stop. As the label implies, community caretaking or public safety reasons alone may justify such an encounter if the reasons are based on specific and articulable facts. *State v. Marx*, 289 Kan. 657, 662, 215 P.3d 601 (2009) (citing *State v. Vistuba*, 251 Kan. 821, 825, 840 P.2d 511 [1992]). No civil or criminal infractions are required.

But we need not determine (1) if the legitimate initial encounter was voluntary or a public safety stop or (2) if it metamorphosed into an investigatory detention. We will simply assume—without deciding—that this became an investigatory detention because even if so, we conclude it was supported by reasonable suspicion. Thus it was not an illegal detention. And therefore Hanke's consent to search was not tainted.

7

*Reasonable suspicion*

We have held that investigatory detentions are constitutionally permissible if an objective officer would have a reasonable and articulable suspicion that the detainee committed, is about to commit, or is committing a crime. *State v. Thomas*, 291 Kan. at 687; *State v. Pollman*, 286 Kan. 881, 889-90, 190 P.3d 234 (2008) (citing *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 [1968], and *State v. Thompson*, 284 Kan. 763, 773, 166 P.3d 1015 [2007]).

Our standard for what is reasonable is based on the totality of the circumstances and is viewed in terms as understood by those versed in the field of law enforcement. *Thomas*, 291 Kan. at 687.

> "'[W]e judge the officer's conduct in light of common sense and ordinary human experience. [Citation omitted.] "Our task . . . is not to pigeonhole each purported fact as either consistent with innocen[ce] . . . or manifestly suspicious," [citation omitted], but to determine whether the totality of the circumstances justify the detention. [Citation omitted.] We make our determination with deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances, [citation omitted], remembering that reasonable suspicion represents a "minimum level of objective justification" which is "considerably less than proof of wrongdoing by a preponderance of the evidence." [Citation omitted.] (quoting *United States v. Mendez*, 118 F.3d 1426, 1431 [10th Cir.1997]; citing *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 [1989]).'
>
> "Similarly, the United States Supreme Court has stated:
>
> "'While "reasonable suspicion" is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification. . . . [Citation omitted.] The officer must be able to articulate more than an "inchoate and

unparticularized suspicion or 'hunch'" of criminal activity. [Citation omitted.]' *Illinois v. Wardlow,* 528 U.S. 119, 123, 145 L. Ed. 2d 570, 120 S. Ct. 673 (2000)." *Thomas,* 291 Kan. at 687-88.

Because both the district court and the Court of Appeals majority ruled the encounter voluntary, neither one addressed the State's alternative argument that Thompson actually possessed reasonable suspicion. See, e.g., *Thomas,* 291 Kan. at 688 ("[b]ecause the district court judge found the encounter involuntary, he did not discuss whether Officer Brown possessed reasonable suspicion to detain Thomas"). Nevertheless, as mentioned we readily conclude from the evidence that under the totality of the circumstances, an objective officer would have—and indeed *did* have—reasonable suspicion to believe that Hanke might have committed a crime, particularly being under the influence, or in possession, of a controlled substance. *Thomas,* 291 Kan. at 688 (whether reasonable suspicion exists is a question of law).

Thompson testified that Hanke's behavior during the encounter gave him concern that Hanke might be under the influence. He supported this suspicion with articulable and reasonable observations. He explained that he had found Hanke in a position not conducive to comfort, i.e., sleep—Hanke was slumped to the right in the driver's seat. He knew Hanke's van had been parked with the engine running for about an hour in the stall in front of the convenience store—a well-lit area. If a driver truly had wanted to sleep, a much more logical parking choice would have been away from the light in the large adjoining parking lot of a Dillon's grocery store—and the engine would have been turned off. Further, based upon Thompson's nearly 20 years of experience, he believed that throughout the entire three-minute encounter Hanke appeared disoriented, had trouble focusing on Thompson, and was slow to answer Thompson's questions. Thompson smelled no alcohol, and the possibility of a medical problem was reduced when Thompson asked if he was okay and Hanke responded he was fine.

9

In sum, we hold that an objective officer, with experience determining between innocent and suspicious circumstances, would be justified in having reasonable suspicion to believe that Hanke was under the influence of an illegal substance. See *Thomas*, 291 Kan. at 687-88 ("reasonable suspicion represents a 'minimum level of objective justification' which is 'considerably less than proof of wrongdoing by a preponderance of the evidence'"). So even assuming the welfare check metamorphosed into a detention, it was not an illegal one, and Hanke's consent to the search during that time was not tainted. See *State v. James*, 301 Kan. 898, 908, 349 P.3d 457 (2015) (consent is recognized exception to Fourth Amendment warrant requirement for search).

The decision of the district court is affirmed. The decision of the Court of Appeals is affirmed.