NOT DESIGNATED FOR PUBLICATION

No. 118,702

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROBERT ALLEN BRUMMETT,
*Appellant*.


MEMORANDUM OPINION

Appeal from Coffey District Court; PHILLIP M FROMME, judge. Opinion filed November 30, 2018. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Christopher Phelan*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., STANDRIDGE, J., and WALKER, S.J.

PER CURIAM:  Robert Allen Brummett appeals his convictions for two counts of unlawfully distributing a controlled substance. Brummett claims the district court erred when it denied his motion to suppress. But Brummett voluntarily let the undercover officer into his home to sell him some OxyContin. We find no Fourth Amendment violation and affirm.

FACTS

In the summer of 2016, a 16-year-old girl and her fiancé gave Robert Allen Brummett and his dog a ride to his home. Brummett offered them a drink and asked if

1

they knew anyone willing to buy pills from him. They declined and later told the girl's mother about the incident. Her mother called police and they interviewed her, the 16-year-old daughter, and the daughter's fiancé.

Three months later, Deputy Garen Honn, knocked on Brummett's door. Honn told Brummett his name was Steve and a friend told him Brummett "might have something [Honn] was looking for." Honn wore plain clothes and a recording device. He arrived at Brummett's house in an unmarked vehicle and never told Brummett he was a law enforcement officer.

Brummett invited Honn into his home, led him through a utility room, through the kitchen, and into the living room. The two men discussed Brummett's dog. Brummett then handed Honn a prescription pill bottle of OxyContin. Honn asked Brummett how many pills he would sell and Brummett asked Honn how many he wanted. Honn offered $100 for 10 pills. Brummett told Honn, "[W]e're good", gave him 10 pills, and accepted $100 from him.

Later in the day, Honn returned for another purchase. He told Brummett he had another $100 and Brummett let him inside. Brummett gave Honn 13 pills in exchange for $100. When asked why, Brummett told Honn, "[W]e're good." Afterwards, Honn obtained a search warrant, executed it, and retrieved the previously marked $200 from Brummett's wallet.

The State charged Brummett with two counts of unlawfully distributing a controlled substance. Brummett moved to suppress all evidence obtained by Honn. After testimony from the mother, her 16-year-old daughter, and the daughter's fiancé, the district court denied Brummett's motion. Relying on *Lewis v. United States*, 385 U.S. 206, 87 S. Ct. 424, 17 L. Ed. 2d 312 (1966), the district court found the State did not violate Brummett's Fourth Amendment rights because Honn was acting like a member of

the public and Brummett voluntarily let the deputy into his home. At trial, Brummett renewed his motion to suppress but the court denied it. A jury convicted Brummett of both counts of distribution of a controlled substance.

ARGUMENT

Brummett alleges Honn performed an unreasonable search when he entered Brummett's home and violated Brummett's rights under the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights.

The parties do not dispute the material facts. As a result, the district court's denial to suppress evidence is a question of law over which this court exercises unlimited review. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018). The Fourth Amendment and § 15 of the Kansas Constitution Bill of Rights protect the public against unlawful government searches and seizures. A government search without a warrant is per se unreasonable unless it falls within one of the exceptions to the warrant requirement. *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014). One such exception is consent. To establish valid consent, the State must prove: (1) clear and positive testimony that consent was unequivocal, specific, and freely given; and (2) the absence of duress or coercion, express or implied. *State v. Cleverly*, 305 Kan. 598, 613, 385 P.3d 512 (2016).

The district court relied on *Lewis*, 385 U.S. at 206. In *Lewis*, a federal undercover narcotics agent called Lewis' home and falsely identified himself as "Jimmy." The agent told Lewis a mutual friend said Lewis would sell him marijuana. Lewis agreed. The agent arrived at Lewis' home, knocked, and identified himself as "Jim." Lewis let the agent into his home and they discussed regular future transactions at a discounted rate. Lewis then led the agent to the front porch. In exchange for $50, Lewis gave the agent a package containing five bags of marijuana. A few weeks later, the agent returned and paid Lewis $50 for six bags of marijuana. A federal district court later convicted Lewis for two

3

counts of illegal transfer of narcotics and he appealed. The United States Supreme Court found: "A government agent, in the same manner as a private person, may accept an invitation to do business and may enter upon the premises for the very purposes contemplated by the occupant." 385 U.S. at 211. The Supreme Court noted the need for some undercover police activity and that the home is granted the full range of Fourth Amendment protections. 385 U.S. at 208, 211. Even so, the Supreme Court noted the undercover agent did not see, hear, or take anything but what Lewis intended as part of his illegal business. The Supreme Court did not find the deception constitutionally prohibited because such a ruling would be a per se constitutional bar against most undercover police investigations. 385 U.S. at 210.

Brummett claims *State v. Johnson*, 253 Kan. 356, 856 P.2d 134 (1993), controls his case. The victim in *Johnson* was a paid confidential drug informant. Law enforcement gave him marked money and a recording device to aid in their investigation of drug sales with Johnson. Officers drove the informant to Johnson's house. The informant, another man, and Johnson left the house in Johnson's truck. Law enforcement began to follow, feared they might endanger their informant, and eventually stopped following Johnson's truck. Later in the evening officers saw two men and Johnson's truck at a car wash. The officers did not see the informant. Concerned for their informant's safety, law enforcement returned to Johnson's home. They wore plain clothes but had their badges clipped to their belts and carried guns inside holsters. They identified themselves to Johnson as law enforcement and he let them into his home. The officers falsely told Johnson they were searching for the missing informant because he had a warrant for a parole violation. They also falsely told Johnson they received a tip the victim was at Johnson's home. Johnson gave them permission to look around. The officers saw revolver shells, guns in a duffel bag, and shotguns on a gun rack. They left the residence, returned with a warrant, and arrested Johnson for conspiracy to sell cocaine. Additional investigation found blood stains in Johnson's truck, the marked money in Johnson's wallet, and the informant's body in a strip pit outside town. Someone chained and

4

padlocked his body to a concrete block. Officers found the key to the padlock on Johnson's key chain.

On appeal, Johnson challenged the entry into his home. He argued he only acquiesced to a claim of lawful authority and, because the officers used fraudulent lawful authority, he did not freely or voluntarily consent to the search of his home. The Supreme Court noted deception is one factor used to decide if the defendant consented to a search under the totality of the circumstances. After weighing several other factors, the Kansas Supreme Court found the police ruse valid. 253 Kan. at 367. The Kansas Supreme Court also ruled: "[A] prerequisite to a valid ruse entry is that officers must have a reasonable suspicion of criminal activity at the residence." 253 Kan. at 365.

Brummett's circumstances are more like *Lewis* than *Johnson*. As in *Lewis*, Honn never identified himself as law enforcement. Instead, Honn acted like another member of the public wanting to buy what Brummett had for sale. He told Brummett his name was Steve and a friend told him Brummett "might have something [Honn] was looking for." Brummett let Honn into his home based on those words alone. Honn accepted Brummett's invitation for the very purposes contemplated by Brummett—to sell OxyContin. See *Lewis*, 385 U.S. at 211. After allowing Honn into his home, Brummett led him through several rooms. They talked about Brummett's dog and purchasing the pills. Afterwards, Honn offered to purchase 10 pills for $100, Brummett agreed. Nothing in their interaction suggests Honn coerced Brummett. Brummett gave unequivocal, specific consent for Honn to enter his home to complete the transaction. Under *Lewis*, Honn's entry and any evidence obtained because of it did not violate Brummett's right against an unreasonable search. See 385 U.S. at 211.

*Johnson* does not apply. Johnson argued he acquiesced to a claim of lawful authority—law enforcement claimed it had a warrant to arrest the informant who was at Johnson's home. Those circumstances are not present here because Honn exercised no

5

authority. Honn claimed to be "Steve" and, as far as Brummett knew, "Steve" was a member of the public. Even if *Johnson* applies to Brummett's case, Honn had reasonable suspicion to begin his ruse. Honn had the information from the 16-year-old girl and her fiancé about Brummett wanting to sell some pills.

The government did not violate Brummett's rights against unreasonable search under either the Fourth Amendment or § 15 of the Kansas Constitution Bill of Rights. The district court correctly denied Brummett's motion to suppress.

Affirmed.