NOT DESIGNATED FOR PUBLICATION

No. 119,847

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LANCE FLINT,
*Appellant.*

MEMORANDUM OPINION

Appeal from Geary District Court; STEVEN L. HORNBAKER, judge. Opinion filed August 30, 2019. Reversed and sentence vacated.

*Paul D. Cramm*, of Paul D. Cramm, Chartered, of Overland Park, for appellant.

*Tony Cruz*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., STANDRIDGE, J., and NEIL B. FOTH, District Judge, assigned.

PER CURIAM: Lance Flint appeals his convictions for possession of marijuana with intent to distribute and not having a drug tax stamp. Flint challenges the trial court's denial of his motion to suppress evidence seized during a search of his vehicle on Interstate 70 in Geary County. The search was incident to a traffic stop for allegedly failing to legally signal a lane change. The officer took Flint into his patrol car, asked about his destination and activities, submitted Flint's information to dispatch, called for backup, and then initiated a dog sniff on Flint's vehicle. The dog alerted to a possible drug odor, and the subsequent search discovered approximately 40 pounds of marijuana.

1

In denying Flint's motion to suppress, the district court found first that the traffic stop was proper, based on (1) the officer's reasonable belief that he had observed an illegal lane change and (2) that the questioning and the dog sniff did not impermissibly extend the scope and duration of the traffic stop.

This case turns on whether the law enforcement officer had an objectively reasonable suspicion that Flint violated K.S.A. 8-1548. The statute reads:

> "(a) No person shall turn a vehicle or move right or left upon a roadway unless and until such movement can be made with reasonable safety, nor without giving an appropriate signal in the manner hereinafter provided.
> "(b) A signal of intention to turn or move right or left when required shall be given continuously during *not less than the last one hundred (100) feet traveled by the vehicle before turning*." (Emphasis added.) K.S.A. 8-1548.

This court reverses the district court's denial of the motion to suppress. We conclude that the officer did not have an objectively reasonable suspicion that a traffic violation had occurred. As such, our recitation of facts, and our analysis, will be limited to those circumstances. We need not reach the issue of whether the officer impermissibly extended the scope and duration of the traffic stop.

*Factual and Procedural Background*

On October 25, 2016, Flint was driving a rental car near mile marker 314, along eastbound I-70 in Geary County, Kansas. As he approached an on-ramp from right, a semitruck was merging into his lane. Flint activated his left turn signal, moved to the left lane, and passed the merging truck.

Officer Nicholas Blake, a Junction City police officer, was driving his patrol car behind Flint's car, along with his drug dog, Barney, and witnessed the traffic maneuver.

2

Officer Blake testified that he saw the car begin to cross into the left lane *before* the driver activated his turn signal. He immediately activated the dashcam recording equipment in his patrol car (preserving the previous minutes) and described what he saw as an "improper signal." Officer Blake also moved his patrol car into the left lane, passed the merging truck, and drove behind Flint's car for almost two more minutes before initiating the traffic stop.

At the pretrial suppression hearing, Officer Blake testified as follows regarding why he stopped Flint:

"Q. Okay. And can you please describe for the Court what you observed?

"A. I was in the right lane. I observed a black passenger vehicle ahead of me, also in the right lane. As we approached the on-ramp for exit 313, there was a slower moving semi that was coming up the on-ramp, which makes a half U-turn. I observed the vehicle in front of me move lanes from the right to the left. It started its movement and then signal after the movement started.

. . . .

"Q. And I believe your testimony is that the defendant's vehicle began to change lanes before he turned on his turn signal?

"A. Correct.

"Q. Okay. Was he—did he cross the center line before he turned on the blinker?

"A. Um, just the start of. So he starts to move his vehicle out of the lane and he hadn't crossed all the way over, and then the signal came on."

The external dash video capturing Flint's lane change was admitted into evidence at the suppression hearing, was viewed by the district court, and is part of the record on appeal. After reviewing the video, Officer Blake testified on cross-examination as follows:

"Q: All right. Can you stop right there. How—how did you determine at that exact moment, that my client didn't wait 100 feet before he got into the passing lane?

3

"A. Because he started to change lanes before the signal ever came on. So he gave zero feet of notice before moving his vehicle out of the lane.

"Q. So you saw his turn signal, his left turn signal come on?

"A. It did come on.

"Q. And did it come on while he was in the right or slow lane?

"A. Yes.

"Q. All right. And so he had to go some number of feet, correct, before he turned left? If the signal is on in his lane, which you just indicated, he had to, then, go some number of feet before he got into the passing lane?

"A. Before he completely got into the passing lane, yes, I would agree with that.

"Q. All right. And you've done the math on this; correct? Takes about 100 feet at 75 miles an hour?

"A. Yes. I believe it's 102 at 70.

"Q. Right. But my client wasn't speeding?

"A. He was not.

. . . .

"Q. Would you agree with me that when you look at that video, my client could have waited 100 feet before he turned left?

"A. Was it possible that he could have done that? Is that [what] you're asking?

"Q. Yes.

"A. Sure, it is."

The district court denied Flint's motion to suppress, ruling that Officer Blake observed a traffic violation, or at least believed that he did. The totality of the court's written order denying the motion to suppress on the unlawful seizure issue states:

"K.S.A. 8-1548 provides '(b) A signal of intention to turn or move right or left when required shall be given continuously not less than the last [100] feet traveled by the vehicle before turning.' Off[icer] Blake observed the defendant's vehicle begin its lane change without signaling at least 100 feet before changing lanes. This would violate the 100 foot minimum distance requirements. See *State v. Greever*, 286 Kan. 124, 183 P.3d 788 (2008). Good Faith Applies To The Erroneous Stopping Of A Vehicle."

4

The district court conducted a bench trial after Flint waived his right to a jury. During the State's presentation of evidence, the district court admitted several exhibits, over Flint's continued objection, consisting of several items found in the trunk of Flint's rental car including: a large black suitcase; 1 of 13 total marijuana packages; 1 of 35 total packages of suspected marijuana; and a KBI lab report identifying packages of suspected marijuana as containing THC.

The district court found Flint guilty of one count of possession of marijuana with intent to distribute, a drug severity level 2 nonperson felony, in violation of K.S.A. 2016 Supp. 21-5707; and one count of no drug tax stamp, in violation of K.S.A. 2016 Supp. 79-5204(a) and K.S.A. 79-5208. The trial court found Flint's criminal history score to be an E and sentenced him to a downward durational departure of 60 months' imprisonment with 36 months' postrelease supervision.

*Analysis*

Flint contends that the district court erroneously denied his motion to suppress by relying on Officer Blake's testimony that he observed a traffic violation. Flint argues that the dashcam video clearly shows him traveling more than 100 feet with his signal on before beginning his lane change and therefore there was no objective factual basis for the stop. The State responds by arguing that the district court did not err because Officer Blake had a reasonable suspicion that Flint had committed an improper signal violation and, in the alternative, that if Officer Blake's suspicion was based on any mistakes of fact, those mistakes were objectively reasonable.

When a defendant moves to suppress evidence, the State bears the burden of establishing the lawfulness of a warrantless search and seizure. K.S.A. 22-3216(2); see *State v. Gray*, 306 Kan. 1287, 1302, 403 P.3d 1220 (2017). In reviewing a trial court's denial of a motion to suppress evidence, this court determines whether the factual

5

findings underlying the trial court's suppression decision are supported by substantial competent evidence. This court reviews the ultimate legal conclusions drawn from the trial court's factual findings under a de novo standard. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

Substantial evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015). Appellate courts give great deference to a trial court's factual findings, meaning they do not reweigh the evidence, make credibility determinations, or resolve conflicting evidence. *White v. State*, 308 Kan. 491, 504, 421 P.3d 718 (2018).

A traffic stop for a suspected violation of law is a seizure under the Fourth Amendment to the United States Constitution, so it is subject to the constitutional requirement of reasonableness. *State v. Smith*, 286 Kan. 402, 406, 184 P.3d 890 (2008). To justify this type of seizure, an officer needs only reasonable suspicion, which is "a particularized and objective basis for suspecting the particular person stopped" of breaking the law. *Navarette v. California*, 572 U.S. 393, 396, 134 S. Ct. 1683, 188 L. Ed. 2d 680 (2014). The Fourth Amendment allows searches and seizures based on a mistake of law or fact, so long as those mistakes are reasonable. Those mistakes must be *objectively reasonable* in order to justify an investigatory traffic stop. See *Heien v. North Carolina*, 574 U.S. 54, 61, 66, 135 S. Ct. 530, 190 L. Ed. 2d 475 (2014).

Applying the law to the factual questions at hand, this court must decide if there was substantial competent evidence to support the district court's conclusion that Officer Blake had a particularized and objective basis for suspecting that Flint had committed a driving offense, justifying his seizure by traffic stop. Further, if Officer Blake had a particularized suspicion but seized Flint based on mistake of fact, was that mistake objectively reasonable?

6

It should be noted here that the district court's reliance on *Greever* is misplaced. That case does not discuss a good-faith exception but rather reiterates the holdings of *Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 113 L. Ed. 2d 89 (1996), regarding pretext stops. That is, the motivation for a traffic stop may be different than citing the driver for the offense observed, but an officer still must articulate facts demonstrating probable cause to suspect that the accused committed a crime. See *Greever*, 286 Kan. at 140-41. *Heien* makes it clear that an officer's good faith is not relevant unless his mistaken belief is objectively reasonable. See 574 U.S. at 66. That is, an officer's mistakes of fact must have an understandable basis. In this case it appears that the district court did not consider, or at least address, the dashcam video in its ruling. The court appears to have relied on Officer Blake's stated belief that he observed a violation and further found that if mistaken, his mistaken belief was in good faith.

While this court does not reweigh evidence or judge the subjective credibility of witnesses, this case is somewhat rare in that there is video evidence of exactly what Officer Blake observed. Whether he observed, or reasonably believed he observed, a traffic infraction is subject to a completely objective measure.

The dashcam video in question is time stamped by the second. It shows Flint's turn signal blinking twice before he begins to move left. The elapsed time from the first blink until the car begins to move left is one and a half seconds. The car's left side wheels cross the centerline on the third blink almost two and a half seconds after the first blink. By Officer Blake's own calculations (102 feet per second at 70 mph), Flint traveled with his signal on for approximately 150 feet before beginning to move left. Flint traveled close to 250 feet before any part of his car entered the left lane.

Officer Blake further testified that he knew the statute; that he knew a driver must signal for less than 100 feet to violate the statute. However Officer Blake also testified that his interpretation of the statute was that the signal must be on for 100 feet "before he

7

got completely into the passing lane." While Officer Blake's interpretation of the statute may not be correct, his belief highlights how objectively unreasonable his mistake was in believing Flint committed the offense. By the time Flint was completely into the passing lane, his signal had been on for five seconds.

Officer Blake's testimony that Flint's car began to move left before its signal came on is not true. Neither is his testimony that "[Flint] starts to move his vehicle out of the lane and he hadn't crossed all the way over, and then the signal came on." Flint signaled for nearly twice the legally required distance before initiating his lane change and nearly three times the required distance before entering the left-hand lane. No traffic patrol officer could have reasonably concluded that Flint's lane change was somehow illegal. By Officer Blake's own calculations he observed Flint's car travel well over the minimum distance required before moving left or touching the centerline. Officer Blake's mistakes of fact, whether good faith or otherwise, were not objectively reasonable.

The district court based its denial of the motion to suppress on Officer Blake's testimony about his observations that day. The district court's misplaced reference to *Greever* implies that it knew Blake's observations were factually mistaken but believed that if the mistakes were made in good faith, the traffic stop was still justified. The district court did not reference the dashcam video and did not make findings that Officer Blake's observations, or mistakes of fact, were objectively reasonable. We conclude that the district court's finding that Officer Blake observed a traffic infraction, or at least had a good-faith belief that he did, was not supported by substantial competent evidence. Flint's motion to suppress all evidence seized pursuant to the traffic stop should have been granted. Since Flint's convictions are predicated on the legality of the stop, Flint's convictions are reversed and his sentence vacated.