NOT DESIGNATED FOR PUBLICATION

No. 124,617

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

ANGELA JONES,
*Appellee*.

MEMORANDUM OPINION

Appeal from Anderson District Court; ERIC W. GODDERZ, judge. Opinion filed July 15, 2022.
Reversed and remanded with directions.

*Elizabeth L. Oliver*, county attorney, and *Derek Schmidt*, attorney general, for appellant.

*John A. Boyd*, of Harris Kelsey, Chtd., of Ottawa, for appellee.

Before ISHERWOOD, P.J., SCHROEDER and WARNER, JJ.

PER CURIAM: On May 14, 2021, Deputy Sheriff David Michael Harper-Head initiated a traffic stop after observing a vehicle sitting unnecessarily stationary at a stop sign, with its high beams activated, and then execute a turn without first activating a turn signal 100 feet before doing so as required by statute. During the stop that ensued, Deputy Harper-Head noticed that the driver, Angela Jones, had red eyes, droopy eyelids, and exhibited confusion as to her location. Based on the totality of this information, alongside his extensive experience and training with impaired drivers, Deputy Harper-Head asked Jones to step out of the vehicle and complete several field sobriety tests. Jones failed three of those tests, was arrested, and Deputy Harper-Head subsequently

1

found methamphetamine in the back of his patrol car after transporting Jones for booking. The State charged Jones with two traffic violations, possession of methamphetamine, and for her third offense of driving under the influence of drugs.

Prior to trial, Jones filed a motion to suppress which the district court granted following a hearing. In support of its ruling, the court explained that it "question[ed]" the lawfulness of the initial stop and also did not believe that Deputy Harper-Head possessed the reasonable suspicion required to expand the stop to conduct a DUI investigation. The State pursued an interlocutory appeal and requests that we review the propriety of the district court's ruling. Following a comprehensive review of the record we conclude reversal of the district court's order is warranted because, in our view, the court failed to analyze the totality of the circumstances. When all those factors are properly considered, they reflect that Deputy Harper-Head did, in fact, have reasonable suspicion to extend the stop. Thus, we reverse and remand Jones' case for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of May 14, 2020, Anderson County Deputy Sheriff Harper-Head was westbound on County Road 2350 when he approached the stop sign where County Road 2350 bisected U.S. Highway 59 and noticed a vehicle sitting directly across from him at the stop sign facing east. The vehicle was stationary for an unusual length of time, with its high beams activated, and did not have a turn signal engaged. Deputy Harper-Head accounted for the only other traffic on the road.

The deputy crossed the intersection and when his patrol car was parallel to the vehicle, he noticed the vehicle's turn signal go on and then off again. Harper-Head performed a U-turn and pulled up behind the vehicle, at which point the driver once again activated her turn signal but then turned onto the highway. Deputy Harper-Head followed and initiated a traffic stop.

2

The vehicle promptly pulled over and Deputy Harper-Head approached the driver, whom he identified as Angela Jones. He observed Jones had red eyes and droopy eyelids, a condition known to Harper-Head and one which he understood from his training and experience to potentially be the result of either a medical condition or drug intoxication. Jones provided a West Virginia driver's license and the deputy inquired where she was coming from and where she was going. Jones responded that she was coming from work at Jet, a company located in Gardner, Kansas. Deputy Harper-Head found the response odd given that Jones was travelling from the west and Gardner was east of their location.

Harper-Head had enjoyed an approximately 20-year career in law enforcement, was a nationally certified and active drug recognition expert, attended the Advanced Roadside Impaired Driving Enforcement course, and recently received accreditation as a standardized field sobriety testing instructor. Thus, based on the early morning hour, Jones' inexplicable delay at the stop sign while using her high beams, her failure to properly signal a turn, her red, droopy eyes, and her somewhat peculiar statements regarding her path of travel, Harper-Head believed it prudent to ask Jones to step from her vehicle and complete several field sobriety tests.

Jones ultimately failed the "walk-and-turn" test, with Deputy Harper-Head identifying "five out of eight possible [cues]" for intoxication. She also exhibited all four possible cues for intoxication while completing the one-leg stand test. Finally, Jones completed the Modified Romberg Test, which measures the accuracy of one's internal clock. Her performance of that exercise reflected an accelerated sense of time. During their interaction, Jones told Deputy Harper-Head that she had taken Zoloft or Sertraline.

Following the field sobriety tests, Deputy Harper-Head placed Jones under arrest and transported her to the jail. Upon their arrival, the deputy noticed "a small plastic bag containing a white substance that appeared to [him] to be methamphetamine." He testified that the bag necessarily belonged to Jones because his custom is to check the

3

backseat prior to the start of every shift to ensure occupants do not attempt to conceal contraband while riding in the vehicle.

Harper-Head secured a search warrant to obtain a blood sample from Jones which yielded a positive result for methamphetamine and amphetamine. The bag recovered from the back of his patrol car likewise tested positive for methamphetamine.

The State charged Jones with possession of methamphetamine, her third offense of driving under the influence of drugs, failure to dim her headlights, and a turn signal violation. Prior to trial, Jones filed a motion to suppress. During the hearing on that motion, Deputy Harper-Head offered the only testimonial evidence, but the State also introduced reports from the Kansas Bureau of Investigation for Jones' blood sample and the white substance from the bag in Harper-Head's patrol vehicle.

Following testimony and arguments from the parties, the district court granted Jones' motion to suppress. In support of its ruling, the court first expressed concerns regarding the legality of the initial traffic stop. It opined that Deputy Harper-Head's testimony concerning Jones' blinker did not "make any sense to the Court from this standpoint" because it was not a "justification for pulling over a vehicle" if the driver pulls up to a stop sign and only then determines which direction to turn, particularly in rural communities where residents rarely utilize turn signals. Additionally, the court noted that the dash camera video Jones introduced into evidence reflected that she properly signaled and correctly pulled to the side of the road when Deputy Harper-Head initiated the traffic stop.

The court further remarked upon the deputy's observations regarding Jones' eyes and noted there were "no other indicators what I normally see or what the Court normally sees in driving under the influence type cases to where there's the smell of alcohol, the slurred speech, all those other types of indicators." In conjunction with that finding, it

observed that Deputy Harper-Head did not know Jones and, therefore, he could not truly assess whether she presented with uncharacteristically droopy eyes that morning.

In conclusion, the court found that, with the exception of Jones' red eyes, it did not believe Deputy Harper-Head possessed the justification required to extend the stop and conduct the testing performed on Jones.

The State filed a timely notice of appeal.

ANALYSIS

To file an interlocutory appeal, the State must assert that the suppression of the evidence substantially impaired the State's case. *State v. Newman*, 235 Kan. 29, 34, 680 P.2d 257 (1984.) The State makes this argument on appeal and therefore jurisdiction is proper.

*Standard of Review*

"The standard of review for a district court's decision on a motion to suppress has two parts. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. But the court's ultimate legal conclusion is reviewed using a de novo standard. *State v. Neighbors*, 299 Kan. 234, 240, 328 P.3d 1081 (2014). The appellate court does not reweigh the evidence or assess the credibility of witnesses. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014). When the facts supporting the district court's decision on a motion to suppress are not disputed, the ultimate question of whether to suppress is a question of law over which the appellate court exercises unlimited review. *State v. Stevenson*, 299 Kan. 53, 57, 321 P.3d 754 (2014)." *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

Resolution of this issue also requires a degree of statutory interpretation, which presents a question of law over which we exercise unlimited review. *Jarvis v. Kansas*

5

*Dept. of Revenue*, 312 Kan. 156, 159, 473 P.3d 869 (2020). "All Kansas courts use the same starting point when interpreting statutes:  The Legislature's intent controls. To divine that intent, courts examine the language of the provision and apply plain and unambiguous language as written." 312 Kan. at 159. In doing so, courts must give "common words their ordinary meaning." *State v. Ryce*, 303 Kan. 899, 906, 368 P.3d 342 (2016). "If the Legislature's intent is not clear from the language, a court may look to legislative history, background considerations, and canons of construction to help determine legislative intent." *Jarvis*, 312 Kan. at 159.

## DID THE DISTRICT COURT ERR IN FINDING DEPUTY HARPER-HEAD LACKED REASONABLE SUSPICION TO INITIATE A TRAFFIC STOP?

The State correctly points out that it is unclear from the district court's ruling whether it found the deputy's initial stop of Jones unlawful. The court remarked that it "questioned" the stop. But its oral pronouncement suggests the primary basis for granting Jones' motion to suppress was the court's finding that Deputy Harper-Head lacked an "objective, reasonable, articulable suspicion that criminal activities" were taking place to justify expanding that traffic stop into a DUI investigation. Due to the presence of such ambiguity, we will analyze the deputy's reasonable suspicion for initiating the traffic stop, as well as the reasonable suspicion he possessed for an extension of that stop.

"Traffic stops are seizures under the Fourth Amendment and are subject to its limitations." *State v. Lowery*, 308 Kan. 359, 363, 420 P.3d 456 (2018). "A police officer may perform a traffic stop if he or she reasonably suspects that the driver committed a traffic infraction." *State v. Arceo-Rojas*, 57 Kan. App. 2d 741, 749, 458 P.3d 272 (2020). "Reasonable suspicion is 'a specific, objective, articulable basis for believing that the person being detained is committing, has committed, or is about to commit a crime.'" 57 Kan. App. 2d at 749 (quoting *State v. Kraemer*, 52 Kan. App. 2d 686, 692, 371 P.3d 954 [2016]). "Whether reasonable suspicion exists is a question of law." *Lowery*, 308 Kan. at

364. When faced with a motion to suppress, the State bears the burden of proving a search or seizure was lawful by a preponderance of evidence. *State v. Pollman*, 286 Kan. 881, 886, 190 P.3d 234 (2008]).

On appeal, the State makes two arguments for why Deputy Harper-Head possessed reasonable suspicion to stop Jones:  the failure to properly and lawfully signal a turn and the failure to dim her headlights, both of which constitute traffic infractions. It first contends that the deputy observed Jones violate K.S.A. 8-1548, the provision addressing the use of turn signals. K.S.A. 8-1548 provides:

> "(a) No person shall turn a vehicle or move right or left upon a roadway unless and until such movement can be made with reasonable safety, nor without giving an appropriate signal in the manner hereinafter provided.

> "(b) A signal of intention to turn or move right or left when required shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.

> "(c) No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal, in the manner provided herein, to the driver of any vehicle immediately to the rear when there is opportunity to give such signal.

> "(d) The signals required on vehicles by subsection (b) of K.S.A. 8-1549 shall not be flashed on one side only on a disabled vehicle, flashed as a courtesy or "do pass" signal to operators of other vehicles approaching from the rear, nor be flashed on one side only of a parked vehicle except as may be necessary for compliance with this section."

Though not explicitly stated, the State appears to rely on subsection (b) as an explanation for Harper-Head's initial traffic stop. The deputy testified that Jones did not have a turn signal activated when he first encountered her stationary vehicle. It was not until after Harper-Head crossed the highway and passed parallel to her vehicle that Jones turned the signal on and then off. Then, after Deputy Harper-Head pulled in behind Jones'

vehicle at the stop sign, she signaled a turn and pulled onto the highway. Accordingly, Jones failed to signal continuously for the last 100 feet before executing a turn in violation of K.S.A. 8-1548(b), which constitutes a traffic infraction.

The State appropriately directs our attention to *State v. Greever*, 286 Kan. 124, 183 P.3d 788 (2008). In that case, Shanon Greever pulled up to a stop sign behind a police officer. The officer noticed that Greever only activated his turn signal after coming to a stop behind the officer's vehicle. The officer initiated a traffic stop and ultimately discovered marijuana in Greever's vehicle. Greever filed a motion to suppress, which the district court denied. This court reversed upon finding that that the officer lacked reasonable suspicion to initiate the traffic stop because K.S.A. 8-1548 did not require an individual to activate a turn signal prior to forming the intent to turn. The Kansas Supreme Court granted review.

The *Greever* court explained that K.S.A. 8-1548 is an "absolute liability offense" and that, without exception, the statute requires "that anyone turning a vehicle must provide 'an appropriate signal'—namely, a turn signal given continuously for at least 100 feet before the turn." 286 Kan. at 138. Put differently, drivers cannot substantially comply with the 100-foot requirement. 286 Kan. at 140. Based on this statutory interpretation, the Kansas Supreme Court reversed this court because Greever did not activate his turn signal until he was parked behind the officer's vehicle. 286 Kan. at 141.

Similarly, Jones did not activate her turn signal until she was already parked at the stop sign for a period of time. Stated another way, she did not signal continuously for the last 100 feet before the turn. Contrary to the district court's suggestions, the statute does not allow her to sit at the stop sign, cogitate whether to turn, and then activate the signal once the intent to turn is formed. Accordingly, Deputy Harper-Head had reasonable suspicion to initiate a traffic stop following Jones' commission of a traffic infraction in violation of K.S.A. 8-1548(b). See also *State v. Demarco*, 263 Kan. 727, 733, 952 P.2d

8

1276 (1998) (holding a violation of K.S.A. 8-1548 provides an officer with probable cause to make a traffic stop). Given our conclusion that the turn signal violation afforded Deputy Harper-Head the requisite reasonable suspicion to initiate the stop, it is not necessary to analyze the State's second claim that Jones' traffic infraction for failing to dim her headlights provided a sufficient basis to perform the stop.

### DID THE DISTRICT COURT ERR IN FINDING DEPUTY HARPER-HEAD LACKED REASONABLE SUSPICION TO EXTEND THE TRAFFIC STOP AND CONDUCT A DUI INVESTIGATION?

On appeal, the State argues that the district court erred in granting Jones' motion to suppress because, based on the totality of the circumstances, Deputy Harper-Head had reasonable suspicion that Jones was operating the vehicle under the influence of a drug. Jones replies that the indicators the State relies on have alternative, lawful explanations.

Traffic stops are "more analogous to an investigative detention than a custodial arrest, so courts treat the traffic stop, whether based on reasonable suspicion or probable cause, under the longstanding limitations from *Terry* for nonconsensual police-citizen contacts." *State v. Jimenez*, 308 Kan. 315, 323, 420 P.3d 464 (2018). "Under *Terry*, . . . a lawful stop must be reasonably related in scope to the circumstances justifying the interference in the first place." 308 Kan. at 323 (citing *Terry v. Ohio*, 392 U.S. 1, 20, 88 S. Ct. 1868, 20 L. Ed. 2d 889 [1968]). During a traffic stop, "the scope of the stop is limited so that the officer may only 'request a driver's license and vehicle registration, run a computer check, and issue a citation.'" *Strickert v. Kansas Dept. of Revenue*, 58 Kan. App. 2d 1, 10, 462 P.3d 649 (2020) (quoting *State v. Golston*, 41 Kan. App. 2d 444, 451, 203 P.3d 10 [2009]). However, the stop may be extended if an officer has "reasonable suspicion to believe that the person was or is involved in additional criminal activity." 58 Kan. App. 2d at 8 (citing *State v. Jones*, 300 Kan. 630, Syl. ¶ 6, 333 P.3d 886; *Pollman*, 286 Kan. 881, Syl. ¶ 3.

"Reasonable suspicion is 'a specific, objective, articulable basis for believing that the person being detained is committing, has committed, or is about to commit a crime.'" *Arceo-Rojas*, 57 Kan. App. 2d at 749 (quoting *Kraemer*, 52 Kan. App. 2d at 692). Reasonable suspicion is more than a hunch. *Lowery*, 308 Kan at 366. "What is reasonable depends on the totality of circumstances in the view of a trained law enforcement officer." *State v. Martinez*, 296 Kan. 482, 487, 293 P.3d 718 (2013). Officers may "'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them.'" *Lowery*, 308 Kan. at 366 (quoting *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 [2002]).

Here, the State argues that several factors, viewed collectively, support a finding that Deputy Harper-Head had reasonable suspicion that Jones was driving while under the influence of drugs. Thus, the district court erred in granting the motion to suppress.

The first factor highlighted by the State relates to the questionable aspects of Jones' driving that the deputy observed prior to the traffic stop. Specifically, the State correctly notes Jones' violation of K.S.A. 8-1548(b). See *Strickert*, 58 Kan. App. 2d at 11 (reasonable suspicion finding for DUI included an officer's "observation of a traffic infraction"). Jones responds by noting that the district court viewed Harper-Head's dash camera footage and observed that Jones properly pulled off the road using her turn signal when the deputy initiated the traffic stop. Though true, the district court also properly observed that the dash camera was not recording when Deputy Harper-Head witnessed Jones' vehicle unnecessarily sitting stationary at a stop sign, or when he witnessed Jones violate K.S.A. 8-1548(b) by not activating her turn signal 100 feet prior to the turn. That is, the conduct that prompted him to execute the stop. An isolated example of appropriate driving does not negate the unlawful or peculiar operation of a vehicle. See *City of Norton v. Wonderly*, 38 Kan. App. 2d 797, 804, 172 P.3d 1205 (2007) (Three minutes of good driving within the city limits did not dissipate the officer's reasonable suspicion based on the fact Wonderly had earlier driven his truck in a reckless manner.).

10

Jones further contends that the fact the stop occurred during the early morning hours is of limited import and "does not logically lead to an inference of impaired driving." However, this court previously rejected a similar argument in *State v. Cox*, No. 110,447, 2014 WL 3732019, at *4 (Kan. App. 2014) (unpublished opinion), when we held that reasonable suspicion existed to extend a traffic stop into a DUI investigation when the arresting officer testified that his belief that the driver was intoxicated was partially based on his experience that "most DUI infractions are detected between midnight and 3 a.m."

Next, the State directs our attention to the information Deputy Harper-Head gathered while interacting with Jones. Specifically, that Jones' red and droopy eyes can help "establish reasonable suspicion and probable cause for a DUI investigation." Jones replies that, as the district court noted, Deputy Harper-Head lacked any awareness of how Jones' eyes appeared under normal circumstances. Thus, a wholly innocent explanation may provide for the redness and ptosis, such as a medical condition or fatigue following a late shift at her job. Put simply, Jones suggests the appearance of her eyes was equally susceptible to innocent conduct.

It is important to note that numerous Kansas courts have considered similar physical characteristics when analyzing reasonable suspicion for DUI determinations. See *Strickert*, 58 Kan. App. 2d at 10 (reasonable suspicion finding for DUI included driver's "watery and bloodshot eyes"); *State v. Bell*, No. 106,360, 2012 WL 4372999, at *6 (reasonable suspicion finding for DUI included driver's "droopy eyes"), *State v. Jury*, No. 102,691, 2010 WL 4156764, at *3 (reasonable suspicion finding for DUI included driver's "droopy bloodshot eyes"); see also *State v. Peltz*, 242 Ariz. 23, 32, 391 P.3d 1215 (Ariz. Ct. App. 2017) (probable cause finding for DUI included driver's ptosis).

Additionally, the State contends that Jones' explanation that she was coming from Gardner, which, in actuality, was the opposite direction than she was coming from,

properly led the deputy to conclude that Jones was confused as to her surroundings. Jones takes issue with this assertion and argues that Harper-Head never followed up on where she was going. And had he done so, a valid explanation might have dispelled his suspicion, particularly given the fact her West Virginia driver's license provided notice of her unfamiliarity with the area. As support for this contention, Jones relies on *Lowery*, where the Kansas Supreme Court explained that a discrepancy between two individuals' accounts of their travel plans was "insignificant as a basis for suspecting criminal activity." 308 Kan. at 368.

We are not persuaded that *Lowery* necessarily advances Jones' position. The facts in that case involved an inconsistency between the travel details provided by two different individuals to the same officer, rather than a single vehicle operator, such as Jones, who appeared confused as to her location. The inconsistency in *Lowery* speaks to evasion or deception, whereas Jones' inconsistency regarding Gardner and her travel history leans toward disorientation. And that factor is one which Kansas courts have found to be indicative of impairment. See *Leister v. Kansas Dept. of Revenue*, No. 115,090, 2017 WL 947236, at *5 (Kan. App. 2017) (unpublished opinion) (reasonable suspicion finding for DUI partially based on driver being "so confused and disoriented that he was unable to tell Officer Walz which direction his pickup truck was facing or explain why he was headed north when his destination was in the opposite direction"); *Scott v. Kansas Dept. of Revenue*, No. 111,589, 2015 WL 2414393, at *5 (Kan. App. 2015) (unpublished opinion) (noting the driver's disorientation and confusion was indicative of impairment); see also *State v. Kellogg*, 22 Neb. App. 638, 645, 859 N.W.2d 355 (Neb. Ct. App. 2015) (reasonable suspicion finding for DUI partially based on driver's confusion).

Ultimately, it is our conclusion that both Jones and the district court erroneously evaluated Deputy Harper-Head's reasonable suspicion determination by (1) analyzing each factor individually, and (2) identifying a legal explanation for each individual factor.

12

This approach runs afoul of our Supreme Court's directive that "[t]he totality of the circumstances standard does not envision a reviewing court pigeonholing each factor as to innocent or suspicions appearances. Instead, the court determines whether all the circumstances justify the detention. *Lowery*, 308 Kan. at 366.

In *Cox*, a panel of this court rejected the very type of analysis engaged in by the district court here. Cox argued "that because there were potentially innocent explanations for each of the factors [the officer] relied on . . . [the officer] could not have formulated a reasonable suspicion that she was intoxicated." *State v. Cox*, No. 110,447, 2014 WL 3732019, at *4 (Kan. App. 2014) (unpublished opinion). In response, this court explained that Kansas caselaw "'precludes a divide-and-conquer analysis'" where each factor that may potentially carry a corresponding innocent explanation is excluded from the totality of the circumstances equation. 2014 WL 3732019, at *4 (quoting *State v. Coleman*, 292 Kan. 813, 817-18, 257 P.3d 320 [2011]).

The appropriate analysis contemplates collective consideration of *all relevant* factors. Undertaking that analysis here, in conjunction with Deputy Harper-Head's extensive experience and training regarding traffic stops and impaired drivers, we do not hesitate to find that the deputy had reasonable suspicion to believe that Jones was driving under the influence of drugs. That is, the early morning hour, her delayed reaction time as evidenced by her unnecessary delay at the intersection, the traffic violation, her red and droopy eyes, and confusion as to her location. Kansas courts have previously found each of these factors compelling and we are similarly persuaded here.

Reversed and remanded to the district court for further proceedings.

13